Ruben F. Arizmendi, Esq.
ARIZMENDI LAW FIRM
SBN 151182
110 West C Street, Suite 1300
San Diego, CA 92101
Tel: (619) 231-0460
Fax: (619) 231-1899

Attorney for Debtor/Respondent

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | CASE NO: 09-19263-PB13 |
| JESSIE ARIZMENDI, | Chapter 13 |
| Debtor. | **JESSIE ARIZMENDI'S TRIAL BRIEF** |
| | Rs No. CNR-1 |
| ONEWEST BANK, FSB, | Date of Hearing: November 8, 2010 |
| | Time: 1:00 pm |
| Moving Party. | Dept.: 3 |
| Vs. | |
| JESSIE M. ARIZMENDI, DEBTOR; AND THOMAS H. BILLINGSLEA, CHAPTER 13 TRUSTEE, | |
| Respondents. | |

**I. FACTUTAL BACKGROUND**

On December 16, 2009, Debtor filed her Chapter 13 voluntary bankruptcy petition. Debtor has a proprietary interest in real property located at 2234 Morose Street, Lemon Grove, CA 91945, (50% interest), the other 50% belonging to Debtor's daughter-in-law. The

DEBTOR'S TRIAL BRIEF

- 1

approximate current market value is $289,500.00 and the debt for the first mortgage is $379,660.17.

Debtor's chapter 13 plan has been confirmed and there was no objection to it by Movant and Movant's previous Motion for Relief from Stay was withdrawn without giving any reason or explanation. Debtor has complied with the terms of the Chapter 13 Plan, as well as the payments for the trial period loan modification entered into with OneWest Bank since before the filing of Debtor's bankruptcy petition. Movant had agreed to accept loan modification payments on a trial basis in the sum of $1,395 per month, which Debtor has been complying with. Therefore, there are no post-petition arrearages.

On April 1, 2010, Movant filed a Motion for Relief from Stay for this same property, with the intention of requesting a right to proceed with a foreclosure, even though Debtor was making timely plan payments and trial loan modification payments. On April 12, 2010, Debtor filed an Opposition to Movant's Motion. On April 16, 2010, Movant filed a Notice to Withdraw their Motion and the hearing was taken off-calendar.

In addition, there is currently pending litigation in the United States District Court Southern District of California, case number 09 CV 2321 IEG CAB, regarding the appropriateness of the Movant's foreclosure proceedings. Movant is attempting to gain an unfair advantage in the civil litigation, which was initiated by Frida Vissuet, who is Debtor's daughter in law and co-owner of the Subject Property, by bringing this Motion for Relief in this bankruptcy case.

///

///

///

## THE FORECLOSURE CRISIS

The court should also note that over the last three years, the United States has been in a foreclosure crisis. A congressional oversight panel has recently noted that one in eight U.S. mortgages is currently in foreclosure or default.[1]

Further, the California Legislature found and declared the following in enacting California Civil Code 2923.6 on July 8, 2008:

> (a) California is facing an unprecedented threat to its state economy because of skyrocketing residential property foreclosure rates in California. Residential property foreclosures increased sevenfold from 2006 to 2007, in 2007, more than 84,375 properties were lost to foreclosure in California, and 254,824 loans went into default, the first step in the foreclosure process.
>
> (b) High foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise. According to statistics released by the HOPE NOW Alliance the number of completed California foreclosure sales in 2007 increased almost threefold from 2002 in the first quarter to 5574 in the fourth quarter of that year. Those same statistics report that 10,556 foreclosure sales, almost double the number for the prior quarter, were completed just in the month of January 2008. More foreclosures means less money for schools, public safety, and other key services.

The legislature also stated that under specified circumstances, mortgage lenders and servicers are authorized under their pooling and servicing agreements to modify mortgage loans when the modification is in the best interest of investors. Generally, that modification may be deemed to be in the best interest of investors when the net present value of the income stream of the modified loan is greater than the amount that would be recovered through the disposition of the real property security through a foreclosure sale.

---

[1] Congressional Oversight Panel, Oct. 9, 2009 report at 3. Available at http://cop.senate.gov/reports/library/report-100909-cop.cfm

Important as well is the fact that between October 2008 and June 2010, the FBI opened 23 local mortgage fraud task forces around the country with the purpose of curtailing the illegal misstatement, misrepresentation or omission of material facts on mortgage applications. As of June 2009, suspicious mortgage-related activity for the year was on track to exceed 70,000 cases, a 10 per cent increase over 2008 levels, according to preliminary FBI estimates. Mortgage fraud-related losses totaled $1.4bn in 2008, an 83.4 per cent rise over the previous year.

In the first six months of 2009, losses exceeded levels for the same period in 2008 by $208m. Los Angeles, Miami, San Francisco, Chicago, Sacramento, New York, Tampa, Detroit, Minneapolis and Atlanta were the top cities in descending order for mortgage fraud.

In addition, the court should also note that a class action law suit has been filed against IndyMac/One West Bank in the state of Nevada. The suit alleges that IndyMac/One West Bank did not deal in good faith with customers borrowing money and used deceptive and unfair practices, such as focusing on minority groups and selling them loans the bank knew those clients couldn't pay.

Lastly, and perhaps most importantly, on October 8, 2010, it was reported that JPMorgan Chase and Bank of America and Ally Financial have halted foreclosure proceedings and sales in the 23 states where judges must sign off on foreclosures. The careless handling of paperwork came to light in court hearings, where bank officials testified that they had signed thousands of documents a month, often without reviewing the information in them[2]. Further, in a sworn deposition in July, 2010, Erica Johnson-Seck, an Austin, Tex., based vice president for bankruptcy and foreclosure for One West Bank, said she and her team of seven others sign 6,000 documents a week or about 24,000 a month without reading all of them[3]. It is evident that OneWest Bank as well as the other above mentioned banks lacked and continue to lack adequate measures of quality control when initiating lending and foreclosure proceedings.

Debtor provides this information to the Court in an effort to demonstrate that she has been an additional victim of IndyMac/One West Bank's abusive lending practices. In making its

---

[2] http://money.cnn.com/2010/10/08/real_estate/foreclosure_halt_QA/index.htm
[3] http://voices.washingtonpost.com/political-economy/2010/09/onewest_bank_employee_not_more.html

decision the court should acknowledge that Debtor is not acting in bad faith but is rather fighting, as many other home owners throughout the country, for the preservation of her most coveted possession.

## II.    CLAIM FOR RELIEF UNDER 11 U.S.C. § 362(d)(1)

### A. DEBTOR'S OPPOSITION TO RELIEF FROM AUTOMATIC STAY SHOULD BE SUSTAINED BECAUSE DEBTOR IS ACTING IN GOOD FAITH

Movant argues that Vissuet's transfer of 50% title to Mrs. Arizmendi pre-bankruptcy filing is bad faith. This is not the case. Debtor is filing her bankruptcy petition in good faith. The accusation is false. To prevail on a motion for automatic stay relief under provision of statute allowing for stay relief as to real property by a secured creditor the petition filing must be part of a scheme to delay, hinder, and defraud creditors involving transfer of ownership interest in real property, creditor must prove that (1) it holds a security interest in the subject real property, (2) filing of the bankruptcy petition was part of a scheme, (3) one purpose of the scheme was to delay creditors, (4) a second purpose of the scheme was to hinder creditors, (5) third purpose of the scheme was to defraud creditors, (6) the scheme involved transfer of all or part ownership in real property without consent of secured creditor or court approval; and (7) the creditor had the right to consent to transfer, absent court approval. 11 U.S.C.A. § 362(d)(4)(A). *In re Duncan & Forbes Development, Inc.* 368 B.R. 27 Bkrtcy.C.D.Cal.,2006.

Here, Movant fails to prove all the required elements in order to prevail on its bad faith claim. First, Debtor concedes that creditor holds a security interest in real property. Second however, Debtor's bankruptcy petition was not a part of a scheme. Rather, Debtor's bankruptcy petition was filed as a result of her strained economic circumstances. Third, Debtor has not schemed to delay creditors in that she has continued making payments to all her creditors. Fourth, Debtor's purpose was not to hinder creditors. Debtor has continued making payments to her creditors and is simply looking for alternate means to better settle her debts. Fifth, Debtor has never intended to defraud creditors. She has always intended to pay her debts and has been obliged to file for bankruptcy as a result of her strained financial situation. Sixth, although Debtor received a 50% interest in the subject Property, Debtor is certain that such a transfer did

not require consent from the creditor or the Court. Lastly, it is uncertain if creditor had a right to consent to the transfer. Accordingly given that at least four of the seven required elements have not been met, Movant's relief from automatic stay should be denied.

### B: MOVANT'S MOTION FOR RELIEF FROM AUTOMATIC STAY SHOULD BE DENIED BECAUSE DEBTOR HAS PROVIDED MOVANT WITH ADEQUATE PROTECTION

To obtain relief from automatic stay, creditor need prevail on only one of two alternative tests: Either the creditor is entitled to relief for cause, including lack of adequate protection of its interest in the subject property or if debtor does not have equity in property and the property is not necessary to the effective reorganization. *Bankr.Code, 11 U.S.C.A. § 362 (d)*.

At this time and even before this time, Debtor provided adequate protection to Movant. Debtor has provided a reasonable amount of protection based on the amount agreed upon in the Home Affordable Modification Trial Period Plan. It is unreasonable that such demands be made on such a frail and vulnerable person who is simply looking for alternatives to pay off her debt. If Movant were acting in good faith, it would accept Debtor's approved and confirmed plan and consider such payments as sufficient adequate protection of their interest.

As additional adequate protection, property values are increasing in the Debtor's neighborhood from the all-time lows they had been experiencing. Currently, Debtor's home is valued between $317,000.00 and 319,566.00 and continues to increase. This is a marked increase from six months ago when the property at issue was valued at approximately $280,000.00. Accordingly, Movant's allegation that Debtor has failed to provide adequate protection is unfounded given that Debtor has provided a reasonable amount of protection based on the amount agreed upon in the Home Affordable Modification Trial Period Plan and based on the increasing value of Debtor's home.

Debtor does not have equity in her property, by virtue of the traditional definition of equity as the value which exceeds the amount due over the fair market value of the property. Such lack of equity was not caused by Debtor's actions but rather was the result of inflated

housing prices and a failing national economy. Debtor should not be held responsible for such acts that are beyond her control.

Lastly, under public policy principles, Debtor's home should be considered necessary to an effective reorganization in that she will be destitute if her home is foreclosed out from under her. Thus, Debtor's livelihood depends on the preservation of this property. The Court in this jurisdiction has recognized that maintaining a family home can be an important component of reorganizing one's financial circumstances. Therefore, the successful completion of Debtor's Chapter 13 Plan depends on her ability to keep her home.

### C: THE COURT SHOULD SUSTAIN DEBTOR'S OPPOSITION TO RELIEF FROM AUTOMATIC STAY BECAUSE DEBTOR'S CONFIRMED PLAN PROVIDES FOR DEBTOR'S PAYMENT OF PRE-PETITION ARREARAGES TO MOVANT THROUGH HER PLAN

A plan proposed under Bankruptcy Code (Code) Chapter 13 becomes effective upon confirmation, see 11 U.S.C. §§ 1324, 1325, and will result in a discharge of the debts listed in the plan if the debtor completes the payments the plan requires, see § 1328(a). Further, in *United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367(2010), the Bankruptcy Court's order confirming Espinosa's proposed plan was a final judgment, see *In re Optical Technologies, Inc.*, 425 F.3d 1294, 1300 (2005), from which United did not appeal. Ordinarily, "the finality of a Bankruptcy Court's orders following the conclusion of direct review" would "stand in the way of challenging [their] enforceability." *Travelers Indemnity Co. v. Bailey*, 557 U.S. 129 S.Ct. 2195, (2009). Rule 60(b), however, provides an "exception to finality," *Gonzalez v. Crosby*, 545 U.S. 524, 529, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005), that "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances," id., at 528, 125 S.Ct. 2641. Specifically, Rule 60(b)(4)-the provision under which United brought this motion-authorizes the court to relieve a party from a final judgment if "the judgment is void."

Additionally, in *United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367(2010), it was found that the Bankruptcy Court's confirmation order was not void under Rule 60(b)(4). It was further established that that order was a final judgment from which United did not appeal. Such finality ordinarily would "stan[d] in the way of challenging the order's enforceability," *Travelers Indemnity Co. v. Bailey*, 129 S.Ct. 2195, (2009). However, the Court also noted that Rule 60(b)(4) allows a party to seek relief from a final judgment that "is void," but only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.

Here, as in *Espinosa*, the Bankruptcy Court's confirmation order is not void under Rule 60(b)(4). That order was a final judgment from which Movant did not appeal. Debtor confirmed a Chapter 13 plan without objection from Movant by Order entered March 27, 2010 (docket #14) that allowed Debtor to cure certain defaults in the Obligation. Thus the Bankruptcy Court's order confirming Debtor's proposed plan was a final judgment. Further, there is no evidence of there being a jurisdictional error since this Court has jurisdiction over these proceedings. Lastly, Movant has not been deprived of notice or the opportunity to be heard in that they received adequate notice of Debtor's bankruptcy proceedings. Accordingly, Court should find that Debtor's confirmed Chapter 13 plan was a final order that cannot be challenged.

**RELIEF UNDER 11 U.S.C. §362(d)(2)**

D. MOVANT'S MOTION FOR RELIEF FROM AUTOMATIC STAY SHOULD BE DENIED BECAUSE GRANTING SUCH WILL RESULT IN AN AILING 86-YEAR OLD WOMAN BEING EVICTED FROM HER HOME AND THEREBY PREVENT HER FROM EXECUTING HER CHAPTER 13 PLAN

Debtor is an ailing 86-year-old woman whose estate amounts to the home which Movant proposes to foreclose. Debtor's physician, Dr. Sheldon H. Steiner, has stated that Debtor has

serious health problems and that the loss of her home would increase her health risks. Further, Debtor's property was physically modified to accommodate her disabilities. Accordingly, the Court should find that Debtor's property is necessary to the Debtor's effective reorganization.

### E. DEBTOR'S OPPOSITION TO RELIEF FROM AUTOMATIC STAY SHOULD BE SUSTAINED BECAUSE MOVANT HAS FAILED TO UPHOLD THE TERMS OF THE HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN AND OTHER LOAN MODIFICATION AGREEMENTS

On 12/1/2009, the parties to this action entered into an Agreement under the Home Affordable Modification Trial Period Plan (Exhibit A). Since the initiation of this agreement Debtor has made timely payments and Movant has accepted such payments. However, after more than 9 (nine) months of successful transactions, Movant has filed a Motion for Relief for Automatic Stay in an effort to continue foreclosure proceedings on Debtor's property. Section 2(B) of the Home Affordable Modification Trial Period states in part the following:

> ...the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this plan terminates...

As previously stated, Debtor has complied with her obligations under the Agreement and has never been notified of Movant's intention to terminate such agreement. Accordingly, Movant's motion for Relief from Automatic Stay should be denied because foreclosure proceedings on Debtor's property are currently suspended due to her full compliance with the terms of the Home Affordable Modification Trial Period Plan.

Furthermore, currently there is an action pending in the United States District Court Southern District of California, case number 09 CV 2321 IEG CAB, regarding the adequacy of Movant's lending practices. During these proceedings, Movant sent two letters to the Plaintiff therein, dated November 2 and November 5, 2009, both of which letters professing to be willing

to work with Plaintiff on a loan modification of the subject Loan. However, Movant failed to uphold its part of the agreement by denying Debtor's co-owner, Frida Vissuet, the agreed upon loan modification without proper justification or notice.

Movant's failure to provide Debtor's co-owner with a loan modification has caused her to file for bankruptcy. Though the Agreement under the Home Affordable Modification Trial Period Plan appeared to be a tentative solution to the problem at hand, by filing a motion for Relief from Automatic Stay, Movant is again showing its unwillingness to work with Debtor and her co-owner and to maintain its side of the bargain. The Court should not tolerate Movant's arbitrary decisions that are causing a willing Debtor to repay her debt in order to save her property. Granting Movant's Motion for Relief from Automatic Stay will simply perpetuate the harm that currently plagues the entire country. Debtor's opposition should instead be sustained in the interest of justice and to maintain the status quo.

F: DEBTOR'S OPPOSITION TO RELIEF FROM AUTOMATIC STAY SHOULD BE SUSTAINED BECAUSE THERE IS AMPLE EVIDENCE SUGGESTING THAT ONE WEST BANK HAS ACTED CARELESSLY WHEN INITIATING FORECLOSURE PROCEEDINGS

In an internal memo obtained by The Associated Press, Houston-based Stewart Title Guaranty Co. is issuing guidelines to its agents that make it difficult to write policies on property foreclosed upon by four banks whose processes are in question. Those banks are JP Morgan Chase, Bank of America, One West Bank and Ally Financial's GMAC Mortgage unit[4]. Further, in a sworn deposition in July, 2010, Erica Johnson-Seck, an Austin, Tex., based vice president for bankruptcy and foreclosure for One West Bank, said she and her team of seven others sign 6,000 documents a week or about 24,000 a month without reading all of them[5]. The media has chose to refer to these people as "robo signers".

---

[4] http://www.google.com/hostednews/ap/article/ALeqM5huGUnCaBz2pZbaoQ1hlcmEtbIgBQD9INQQ0O0?docId=D9INQQ0O0

[5] http://voices.washingtonpost.com/political-economy/2010/09/onewest_bank_employee_not_more.html

DEBTOR'S TRIAL BRIEF

- 10 -

Here, Debtor is an additional victim of One West Bank's careless practices. It is unwarranted that Debtor's Relief from Automatic Stay be denied when One West Bank's foreclosure practices are being scrutinized by Court's throughout the country. As previously mentioned, the adequacy of One West lending practices with respect to the Loan issued to Debtor's daughter-in-law is currently being heard in the United District Court for the Southern District of California. The District Court is therefore a better forum to settle this dispute. Accordingly, Movant's motion for relief from automatic stay should be denied.

**WHEREFORE,** Debtor, Jessie Arizmendi, prays as follows:

1: That Movant's Motion for Relief from Automatic Stay be DENIED.

Respectfully Submitted,

Dated: October 19, 2010

/s/ Ruben F. Arizmendi
RUBEN F. ARIZMENDI, ESQ