1 | ROBERT R. BARNES (BAR NO. 144881)
JOSHUA DEL CASTILLO (BAR NO. 239015)
2 | ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
3 | 501 West Broadway, 15th Floor
San Diego, California 92101-3541
4 | Phone: (619) 233-1155
Fax: (619) 233-1158
5 | E-Mail: bbarnes@allenmatkins.com

6 | Attorneys for Secured Creditor
OneWest Bank, FSB

7

8 |                UNITED STATES BANKRUPTCY COURT

9 |                  Southern District of California

10

11 | In re                          | Case No. 09-19263

12 | JESSIE M. ARIZMENDI,            | RESPONSE OF ONEWEST BANK, FSB, TO
                                    | ORDER TO SHOW CAUSE
13 |
              Debtor.               | Date:      July 29, 2011
14 |                                | Time:      10:00 a.m.
                                    | Dept:      3
15 |                                | Judge:     Hon. Laura S. Taylor

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

769142.04/SD

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3  1.   Preliminary Statement ...................................................................................................... 1

4  2.   A servicer can be the secured creditor ............................................................................. 3

5  3.   Factual Background and the Loan ..................................................................................... 6

6       A.   OneWest Bank, FSB ............................................................................................. 6

7       B.   Loans owned or serviced by IndyMac Bank, F.S.B ............................................. 6

8       C.   IndyMac Bank Failure, Sale to OneWest ............................................................ 6

9  4.   The record in the Arizmendi chapter 13 case ................................................................... 8

10 5.   The discrepancies regarding the note are document-management problems ................... 13

11 6.   Mistakes should not give rise to sanctions ..................................................................... 13

12 7.   Conclusion ....................................................................................................................... 15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

769142.04/SD

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*In re Salazar*, 2011 Bankr. LEXIS 1187 (Bankr. S.D. Cal. 2011) ..................................................... 5

*Veal v. Am. Home Mort. Servicing, Inc. (In re Veal)*, 2011 Bankr. LEXIS 2158,
    (BAP 9th Cir. Jun 10, 2011) ......................................................................................... 4, 5, 8

## <u>Statutes</u>

11 U.S.C. § 101(10) ........................................................................................................................ 3

11 U.S.C. § 101(5) .......................................................................................................................... 3

11 U.S.C. § 101(51B) .................................................................................................................... 14

11 U.S.C. § 102(2) .......................................................................................................................... 5

Cal. Civ. Code § 2924(a)(1) ........................................................................................................... 5

Cal. Comm. Code § 1201(21)(A) ................................................................................................... 3

Cal. Comm. Code § 3205(b) ........................................................................................................... 4

Cal. Comm. Code § 3301 ................................................................................................................ 4

Cal. Comm. Code § 3412 ................................................................................................................ 4

## <u>Other Authorities</u>

*UCC Rules Applicable to the Assignment of Mortgage Notes and to the Ownership
    and Enforcement of those Notes and the Mortgages Securing Them* ................................. 5

1    OneWest Bank, FSB, secured creditor, respectfully submits this response to the Court's

2    Order to Show Cause entered June 14, 2011, Docket No. 73.

3    **1.    Preliminary Statement**

4        OneWest takes seriously the concerns this Court expressed in its memorandum decision

5    filed May 26, 2011, Docket No. 68, and the subsequent OSC.  OneWest agrees with the Court's

6    comment in an earlier scheduling order:

7        OneWest participates in this Court on what is in all likelihood a daily basis.  It seeks orders
         from the Court with regularity.  The Court must be able to trust the accuracy of the
8        information that OneWest provides and must police the proceedings in front of it to ensure
         that this is the case.

9
     Order Setting Briefing Schedule, Docket No. 56, filed Jan. 21, 2011, pp. 7–8 of 8.  Indeed, it is
10
     specifically because the Court's concerns are so serious, and the accusations so unwarranted (if
11
     understandable), that OneWest responds at some length.  OneWest did not misrepresent facts or
12
     attempt to mislead the Court or parties.  OneWest suggests that what happened here resulted from
13
     misunderstandings, inattentive use of ambiguous language, and careless submission of exhibits to
14
     various filed documents.  Some of the misunderstandings, some of the exchanges in the transcripts
15
     are like ships passing in the night and would be humorous were it not for the seriousness of the
16
     possible reputational effects on OneWest.
17
         The relevant facts are these:
18
19       • Freddie Mac is, and has been since before this case was commenced, the "owner"
           of the loan.
20
21       • OneWest is, and has been since before this case was commenced, a "servicer" of
           the loan.
22
23       • OneWest is, and has been since before this case was commenced, the "holder" of
24         the Vissuet promissory note and the beneficiary under the deed of trust.  As such,
25         OneWest has a claim against the debtor and is a secured creditor of the debtor.
26       • Before this case was commenced, Vissuet knew or should have known that Freddie
           Mac was the owner of the loan.
27

28

1      • OneWest did not make any misstatements about its role. OneWest never hid the
2        fact that it was a servicer.
3      • Taking action in its own name (as it could, as holder and beneficiary), OneWest
4        merely followed its obligations to Freddie Mac.

5      OneWest's positions in its proof of claim, in its two motions for relief from stay, and in

6  other filings and testimony were consistent. OneWest's explanations were, however, sometimes

7  confusing. Most importantly, OneWest aggravated the situation by presenting *three* non-identical

8  copies of the Vissuet note. Although, as discussed below, the explanation for this is both innocent

9  and understandable, much inconvenience could have been avoided if OneWest had done it right

10 the first time. And OneWest should have been more vigilant about correcting misunderstandings

11 as they occurred. OneWest apologizes, to the Court and to the debtor, for those failings.

12     Specifically because the Court's concerns go to the integrity of OneWest's people and

13 business operations and relate to the efficient administration of justice, OneWest responds in detail

14 so that the Court will have a complete picture, a more complete picture than OneWest has

15 presented in its papers in support of relief from the automatic stay, including of OneWest's

16 continuing efforts to respond to the unprecedented number of loan defaults and to improve its

17 procedures for addressing those defaults. This expanded discussion was not strictly relevant to the

18 prosecution of the motion for relief from stay, but it is appropriate now to give the Court some

19 context.

20     OneWest begins this response with an explanation of the counterintuitive fact that a

21 servicer can be the secured creditor even if it is not the owner of the loan. OneWest then explains

22 a little about its relationship with IndyMac Bank, F.S.B., which at one time owned the loan and

23 which thereafter serviced the loan, with the FDIC, from whom OneWest purchased the servicing

24 rights for the loan, and with Freddie Mac, on whose behalf OneWest services the loan. Then

25 OneWest looks at events in the chapter 13 case itself, including how the misunderstandings

26 developed.

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

769142.04/SD

1    **2.       A servicer can be the secured creditor.**

2            This chapter 13 case is about the enforcement of a promissory note and deed of trust

3    against the maker of that promissory note and the owners of the property subject to the deed of

4    trust.  *OneWest* is the party entitled to enforce the promissory note and deed of trust against the

5    borrower and the debtor.  The Bankruptcy Code's definition of "creditor" is an entity that "has a

6    claim against the debtor. . . ."  11 U.S.C. § 101(10).  "Claim," in turn, means for these purposes a

7    "right to payment."  11 U.S.C. § 101(5).  The question, then, is whether **OneWest** has a right to

8    payment from the debtor and the borrower.  The answer, under the California Commercial Code,

9    under the California Civil Code, and under the Bankruptcy Code, is yes.  The fact that OneWest

10   has obligations to the **owner** of the loan does not change the analysis.

11           The debtor presented two syllogisms that get this wrong:[1]  if OneWest is the servicer of the

12   note, then it can't be the secured creditor.  (False; it can be and is both.)  If OneWest is the holder

13   of the note, then it can't be the servicer of the note.  (False; OneWest is the holder of the note <u>and</u>

14   services it for Freddie Mac.)  The debtor's confusion is understandable and stems in part from the

15   unfortunate use of the word "holder."  "Holder" can be synonymous with "owner."  OneWest is

16   not the owner.  But "holder" also has a meaning under the Commercial Code specifically

17   applicable to OneWest, and OneWest is the "holder" of the note within that specialized meaning.

18   OneWest is and has been and has consistently claimed to be the holder of the note, but for

19   purposes of clarity in this response, OneWest will be described as the "Article 3 Holder" of the

20   note.

21           The Vissuet note is a promissory note governed by Article 3 of the California Commercial

22   Code.  "Holder" (or "Article 3 Holder") means the person in possession of a negotiable instrument

23   that is payable to either to bearer or to an identified person that is the person in possession."  Cal.

24   Comm. Code § 1201(21)(A).  There are thus two requirements:  possession, and "payability."

25   OneWest consistently said that it was the [Article 3] Holder and was in possession.  As discussed

26

27

28

---

[1]    Docket No. 60, filed Mar. 14, 2011, p. 8 of 12.

1  below, that assertion was correct; the note is indorsed in blank, and that is equivalent to "payable

2  to bearer."  Cal. Comm. Code § 3205(b).

3      The Commercial Code makes very clear that the Article 3 Holder is a person entitled to

4  enforce the note *even if it does not own the note*.  "A person may be a person entitled to enforce

5  the instrument even though the person is not the owner of the instrument."  Cal. Comm. Code

6  § 3301.  A servicer, who is not the owner of the note, may nevertheless be entitled to enforce it.

7      And the Commercial Code also clarifies that the Article 3 Holder has a claim against the

8  maker:  [t]he obligation is owed *to* a person entitled to enforce the instrument."  Cal. Comm. Code

9  § 3412.  If the note were unsecured, an Article 3 Holder could file suit against the maker suit in its

10  own name.  The Article 3 Holder has a right to payment from the maker and is entitled to file a

11  proof of claim.  The correlative of this is that if the debtor *pays* the Article 3 Holder, the debt is

12  discharged, even if the Article 3 Holder absconds with the funds and fails to pay the owner of the

13  note.

14      The Bankruptcy Appellate Panel of the Ninth Circuit recently made the point that a single

15  person may be both the "person entitled to enforce" the note and the agent for those who own the

16  note.  And the maker of the promissory note should not care about this distinction:  if the maker

17  pays the "person entitled to enforce," the maker has satisfied its obligations.

18         To re-emphasize the oft-overlooked point: Article 3 is sufficiently flexible to allow
a single identified person to be both the "person entitled to enforce" the note, and an agent
19  for all those who may have ownership interests in a note. This point reflects the view that
so long as the maker's obligation is discharged by payment, the maker should be indifferent
20  as to whether the "person entitled to enforce" the note satisfies his or her obligations, under
the law of agency, to the ultimate owners of the note.

21  *Veal v. Am. Home Mort. Servicing, Inc. (In re Veal)*, 2011 Bankr. LEXIS 2158, *34–35 (BAP 9th

22  Cir. Jun 10, 2011).

23      This result is not changed by the fact that the promissory note is secured by real property.

24  California law for foreclosing on a deed of trust emphasizes that irrespective of ownership, what

25  matters is the party entitled to enforce the obligations and deed of trust.  The *beneficiary* may

26  enforce the deed of trust, including conduct the foreclosure sale, arrange for a substituted trustee,

27  etc.  (The deed of trust was assigned to OneWest before the chapter 13 case was commenced, and

28

again afterwards.)  The California Civil Code, for example, provides that a "trustee, mortgagee *or beneficiary* or any of their authorized agents" may conduct the foreclosure process.  See Cal. Civ. Code § 2924(a)(1) (emphasis added).  (Case after California case has also recognized that the party pursuing a California foreclosure does not need to possess or produce the promissory note. See *Veal,* 2011 Bankr. LEXIS, *47–48, n. 34 (collecting many cases).[2]  Because OneWest is the Article 3 Holder, the presence or absence of the note does not matter here, but the California case law shows that for purposes of presenting a prima facie case, the note itself is not that important.)

OneWest therefore has a claim against property of the debtor — the property subject to the deed of trust.  Under section 102(2) of the Bankruptcy Code, "claim against the debtor" includes claim against property of the debtor.  OneWest has an enforceable claim against the debtor, that is, a right to payment from the debtor.

These rules are somewhat confusing, so confusing, in fact, that the Permanent Editorial Board for the Uniform Commercial Code issued a draft report, *UCC Rules Applicable to the Assignment of Mortgage Notes and to the Ownership and Enforcement of those Notes and the Mortgages Securing Them*.[3]  As the PEB noted, recent economic developments have created a new focus on the enforcement and collection of mortgage debt, and "it has become apparent that not all courts and attorneys are familiar" with the relevant UCC provisions.[4]  In *Veal*, the BAP made liberal use of the draft report.

The law is clear, then, that a servicer who is an Article 3 Holder of a note and beneficiary under a deed of trust is a person with the state-law right to enforce the obligation against the maker or property owner.  That fact that the servicer does not own the note is irrelevant.  As a person entitled to enforce the obligations, the Article 3 Holder has a right to payment and is therefore a creditor.  OneWest is unaware of a decision that suggests that an Article 3 Holder may not be a creditor merely because the Article 3 Holder is not the owner.

---

[2]  The court cited *In re Salazar*, 2011 Bankr. LEXIS 1187 (Bankr. S.D. Cal. 2011), as contrary, but OneWest believes that *Salazar*, which turned on the recording of the assignment of the deed of trust, is not inconsistent.

[3]  Available at http://extranet.ali.org/directory/files/PEB_Report_on_Mortgage_Notes-Circulation_Draft.pdf.

[4]  Draft Report at 1.

3. **Factual Background and the Loan**

        With that legal analysis as a background, OneWest turns to the history of this loan and the relevant parties.

        A.        *OneWest Bank, FSB*

        OneWest is a federally chartered savings bank, formed in March 2009 to acquire certain assets and assume certain liabilities (mostly deposits) originally owned by IndyMac Bank, F.S.B.[5] OneWest owns real estate loans on its own behalf and, more relevantly for this response, services loans owned by other.  As Vissuet knew before the case was commenced, and as the debtor knew at some point, IndyMac Mortgage Services is a division of OneWest.[6]  OneWest, through IndyMac Mortgage Services, services over $150 billion of mortgage loans on the behalf of third parties.

        B.        *Loans owned or serviced by IndyMac Bank, F.S.B.*

        The Vissuet promissory note[7] is dated July 24, 2007, and is payable to the order of PacificBanc Mortgage, a California corporation.  PacificBanc Mortgage indorsed the note to IndyMac Bank, F.S.B.  At some point thereafter, IndyMac Bank, F.S.B. indorsed the note in blank and Freddie Mac became the owner, or "investor."  Vissuet knew or should have known that Freddie Mac was the owner:  at least one notice she received states, "Freddie Mac is the owner of your loan," and the Freddie Mac logo is at the top of the document.[8]  IndyMac Bank, F.S.B. retained the servicing rights.

        C.        *IndyMac Bank Failure, Sale to OneWest*

        On July 11, 2008, the Office of Thrift Supervision appointed the Federal Deposit Insurance Corporation as receiver for IndyMac Bank.  The OTS created a *new* savings bank, IndyMac

---

[5]    Office of Thrift Supervision Order No. 2009-13, 2009 OTS DD LEXIS 13 (Mar. 4, 2009), a copy of which is attached as Exh. A to the Request for Judicial Notice ("RJN").

[6]    The trial-period plan that Ms. Vissuet signed shows, right next to her signature, that IndyMac Mortgage Services is a division of OneWest Bank; the debtor submitted this plan in support of her opposition to relief from stay.  Docket No. 19-1, filed Apr. 12, 2010, p. 7 of 7.

[7]    References to the promissory note are to Docket No. 61-3, filed Mar. 14, 2011.  This same promissory note is authenticated in a related declaration, Docket No. 62, filed the same date, but the note itself was inadvertently omitted from the court-filed copy.

[8]    See Arizmendi declaration in support of opposition to relief from stay, 29-1, filed Sep. 15, 2010, p. 15 of 15.

1  **Federal** Bank, FSB, and appointed the FDIC as conservator of IndyMac Federal Bank.  IndyMac

2  Federal Bank opened for business on Monday, July 14, 2008.[9]  By operation of federal law,

3  IndyMac Bank's assets transferred to IndyMac Federal Bank.

4        In March 2009, the FDIC as conservator/receiver for IndyMac Federal Bank sold certain

5  IndyMac Bank assets Sale to OneWest.  The various purchase agreements are extremely

6  voluminous.  OneWest directs the Court and parties to the press release posted at the FDIC's web

7  site, http://www.fdic.gov/news/news/press/2009/pr09042.html, a copy of which is attached as

8  Exh. C to the RJN.

9        On July 23, 2009, an assignment of the deed of trust from MERS, the party identified in

10  the deed of trust as beneficiary, to OneWest Bank was recorded.[10]  This assignment was done to

11  comply with Freddie Mac's servicing regulations, which require that if the beneficiary is registered

12  with MERS, the mortgage must be assigned to the servicer in connection with the foreclosure:

13  > If the Servicer is foreclosing on a Mortgage registered with the Mortgage Electronic Registration Systems Inc. (MERS), the Servicer must prepare an assignment of the Security Instrument from MERS to the Servicer and instruct the foreclosure counsel or trustee to foreclose in the Servicer's name. . . .

14  

15  Freddie Mac Single Family/Single-Family Seller/Servicer Guide § 66.17 (Foreclosing in the

16  Servicer's name).[11]

17        The situation as of the commencement of the chapter 13 case, then, was that OneWest was

18  the beneficiary under the deed of trust.  Freddie Mac was the owner of the loan.  Although there is

19  no direct evidence about the exact date on which IndyMac Bank, F.S.B. indorsed the note in

20  

21  

22  [9]  See Office of Thrift Supervision Order No. 2008-24, 2008 OTS DD LEXIS 16 (Jul. 11, 2008), attached as Exh. B to the RJN.  Note that this situation is so confusing that even the FDIC itself sometimes gets it wrong.  The information on the web site says that the FDIC was originally appointed as conservator, not receiver, for IndyMac Bank.  That's wrong.  As the OTS order makes clear, the FDIC was never conservator for IndyMac Bank—just receiver. Worse, in connection with the OneWest transaction, the FDIC converted from *conservator* for IndyMac Federal Bank to *receiver* for IndyMac Federal Bank.  So some transaction documents refer to FDIC as receiver; others, effective as of the same date, refer to FDIC as conservator.

23  

24  

25  

26  [10]  Docket No. 15-2, filed April 1, 2010, p. 22 of 26, submitted in support of OneWest's first motion for relief from the automatic stay.  For reasons unknown, a second assignment from MERS to OneWest was recorded.

27  [11]  Exhibit 1 to the declaration of Suchan Murray submitted in support of this response.  The version attached as Exh. 1 is dated Apr. 4, 2011, and was the version that OneWest could locate promptly, but these terms applied in 2009 as well.

28

1    blank, it is fair to surmise that that happened before IndyMac Bank, F.S.B. went out of business.

2    And the evidence as of April 2010 is that OneWest was in physical possession of the note.

3    **4.    <u>The record in the Arizmendi chapter 13 case.</u>**

4    Because OneWest stands accused of playing fast and loose with the rules, it is imperative

5    to analyze in great detail the record that OneWest presented.  The debtor filed her schedules on

6    December 16, 2009, along with her chapter 13 petition.  Schedule D identifies the creditor as

7    "IndyMac Mortgage Services," which, as Vissuet knew, is a division of OneWest Bank.[12]

8    On March 13, 2010, OneWest filed its proof of claim.  The proof of claim form describes

9    "creditor" as "the person or other entity *to whom the debtor owes money or property*," (emphasis

10    added), and the creditor is accurately shown as "OneWest Bank FSB."  At the time, OneWest was

11    servicing the loan for Freddie Mac.  The Freddie Mac servicing regulations instruct the servicer to

12    process the foreclosure in the name of the servicer, not in Freddie Mac's name:

13    
>    The Servicer must instruct the foreclosure counsel or trustee to process the foreclosure in
14    the Servicer's name.

15    Exh. 1 to the Murray declaration.  Consistent with those regulations, OneWest filed the proof of

16    claim in its name.  As shown above in Part 2, OneWest was entitled to demand payment *from the*

17    *debtor* and to enforce the loan document against the borrower and the debtor.  It was thus

18    appropriate for OneWest to describe itself as secured creditor, exactly as the debtor had done.

19    It might be useful for someone to know whether, when a creditor enforces its rights, it does

20    so as principal or agent.  In *Veal*, however, the BAP suggests otherwise.  The BAP says that the

21    maker of the note should be "indifferent" about the identity of the "ultimate owners" of the note:

22    
>    [S]o long as the maker's obligation is discharged by payment, the maker should be
>    indifferent as to whether the "person entitled to enforce" the note satisfies his or her
>    obligations, under the law of agency, to the ultimate owners of the note.

23    *Veal*, 2011 Bankr. LEXIS 2158, *34–35.  OneWest believes that in light of its servicing

24    obligations and the law, it was correct to identify itself as secured creditor.  And to assert that it is

25    secured creditor is *not* to represent that it is the owner.  Even if someone disagrees, however,

26    OneWest should not be accused of deception in following its reasonable position.

27

28

---

[12]    Docket No. 1, p. 13 of 50.

The exhibits to the proof of claim included the note, payable to the order of PacificBanc Mortgage,[13] the deed of trust, identifying MERS as the nominee for the lender,[14] and an assignment of the deed of trust from MERS to OneWest Bank, FSB.[15]  As of March 13, then, the record was clear and undisputed:  the debtor and OneWest agreed that OneWest was the secured creditor.  OneWest submitted evidence of Ms. Vissuet's indebtedness.  OneWest was the beneficiary under the deed of trust and under California is the party entitled to control the foreclosure.[16]

The only inadequacy in the proof of claim was that the note was not indorsed.  It was a true and correct copy of the note *at the time that Ms. Vissuet signed it*.  Especially given that the debtor acknowledged that OneWest was the creditor, this omission was not important:  the proof of claim showed that OneWest, beneficiary, was the person entitled to foreclose.  (The note discrepancies are explained below and in the accompanying Murray declaration.)

On April 1, 2010, OneWest filed it first motion for relief from stay.  The supporting declaration of Chamagne Williams stated, "Secured Creditor is the real party in interest in this pending motion as they are the current beneficiary under the terms of a promissory note and/or Deed of Trust attached hereto.  Secured Creditor is the holder and in actual physical possession of the original Promissory Note."  That language was correct but somewhat confusing.

*OneWest was in possession of the note*:  that was her testimony, and there has never been any testimony suggesting the contrary.

*OneWest was the holder*:  we know that the noted was indorsed in blank, and that indorsement, plus possession, equals Article 3 Holder.

---

[13]  Claim 3-1 filed Mar. 13, 2010, p. 18 of 23.
[14]  Id. p. 4 of 23.
[15]  Id. p. 23 of 23.
[16]  As Ms. Vissuet and the debtor knew, IndyMac Mortgage Services is a division of OneWest Bank, FSB.  The trial-period plan that Ms. Vissuet signed shows this right next to her signature; the debtor submitted this plan in support of her opposition to relief from stay. Docket No. 19-1, filed Apr. 12, 2010, p. 7 of 7.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

769142.04/SD

*OneWest was the real party in interest*:  as Article 3 Holder of the note and beneficiary under the deed of trust, OneWest could enforce the loan documents.  As far as Fed. R. Civ. P. 17 is concerned, OneWest was in fact a real party in interest.

*They are the current beneficiary under the terms of a promissory note and/or Deed of Trust attached hereto*:  OneWest was the current beneficiary under a deed of trust.  OneWest was **not** the "beneficiary," whatever that means, under the note.  Because the statement includes "or," the statement is true:  OneWest was the beneficiary under the deed of trust, or OneWest was the beneficiary under the note.  The use of "and/or" is sloppy, and the sentence is awkward.  But the sentence was and is true.  And it does not constitute a claim that OneWest "owns" the note or the loan.

The Williams declaration is accurate and contains no misrepresentations.  The problem is that OneWest attached to that declaration a copy of the note that did not *prove* it that the declaration was accurate.  The copy submitted contained an allonge indorsement from the original lender to IndyMac Bank, F.S.B.  That copy, by itself, did not show that OneWest was now the Article 3 Holder (that is, it did not show an indorsement either in blank or to OneWest).  Again, because OneWest's ability to file a proof of claim and motion was not at issue, this sloppiness was not material.  It was nevertheless sloppy, especially OneWest had now submitted two different forms of the note:  one not indorsed at all, one indorsed to IndyMac Bank, F.S.B.

When OneWest filed another motion for relief from stay, the testimony (from a different declarant) was unchanged:  still accurate, and still awkward:  OneWest is the [Article 3] Holder of the note, OneWest is the beneficiary, OneWest has physical possession of the note.

The confusion really began with the testimony at the January 12, 2011 evidentiary hearing. The debtor examined Charles Boyle, a OneWest employee.[17]

Q     OKAY. TODAY YOU CANNOT CONFIRM THAT THIS VERY NOTE IS A NOTE ON WHICH ONEWEST BANK HAS A RIGHT TO COLLECT; ISN'T THAT CORRECT?

---

[17]   Docket No. 64, filed Apr. 11, 2011, p. 41 of 124.

1    A     NO. YOU ASKED IF I SAW ANY DOCUMENTS RELATING TO THE

2    TRANSFER. I DON'T BELIEVE I SAW A SPECIFIC DOCUMENT; BUT AS THE

3    SERVICER COLLECTING PAYMENTS ON THIS ASSET, WE ARE ALLOWED TO

4    SERVICE THIS -- THIS LOAN.

5         Q     DO YOU KNOW WHO THE HOLDER OF THE LOAN IS?

6         A     I BELIEVE THE BENEFICIARY AT THIS TIME IS FREDDIE

7    MAC.

8         Q     SO THIS IS A FREDDIE MAC LOAN, CORRECT?

9         A     CORRECT.

10   Note that Boyle does not answer the question that debtor's counsel asked.  The question related to

11   the <u>holder</u> of the loan.  It is uncertain whether counsel uses "holder" to mean "Article 3 Holder" or

12   more colloquially.  The answer related to the "beneficiary" of the loan.  Boyle then confirmed that

13   this is a Freddie Mac loan.

14        Boyle's testimony is entirely consistent with the record that OneWest had previously put

15   forth.  OneWest had never stated that it owned the loan.  OneWest had never been asked if it

16   owned the loan.  And ownership of the loan, as distinct from the entitlement to enforce it, had

17   never been relevant.

18        The tension is summed up in a colloquy that the Court had with the witness:

19        COURT:     DURING THE BREAK, I WENT AND LOOKED AT THE

20   PROOF OF CLAIM FILED BY ONEWEST IN THIS CASE AND IT INDICATES

21   THAT ONEWEST IS A SECURED CREDITOR. THE DECLARATION FILED

22   INITIALLY IN SUPPORT OF THE RELIEF FROM STAY ALSO STATES THAT

23   ONEWEST IS A SECURED CREDITOR. BUT YOU'RE TELLING ME THEY'RE

24   SIMPLY A SERVICER?

25        THE WITNESS:     WELL, WE'RE THE SECURED -- WE WERE THE

26   AGENT ACTING ON BEHALF OF THE INVESTOR.

27

28

1    THE COURT: BUT THERE'S NO INDICATION OF THAT IN THE FILE PRIOR

2    TO YOUR TESTIMONY. SO HAS THAT CHANGED SINCE THE CASE WAS FILED,

3    SINCE LAST FALL?

4    THE WITNESS:    I DON'T BELIEVE SO.

5    The Court is clearly of the view that because OneWest is simply the servicer, it cannot be the

6    secured creditor.  As noted above, that is not necessarily the case.  There was no conflict:

7    OneWest was, and is, secured creditor (as far as the debtor and borrower are concerned) and

8    servicer (as far as Freddie Mac is concerned.)[18]

9    With due respect, the Court goes one or two steps too far.  In the order setting briefing

10    schedule, the Court described OneWest's position as follows:

11    "[OneWest] described itself as a secured lender. . ."

12    OneWest described itself as a secured creditor; OneWest did not state that it was the

13    lender.

14    ". . .with the right to recover payments under the Note. . ."

15    Correct; as Article 3 Holder and beneficiary under the deed of trust, it was entitled to

16    enforce the documents against the borrower and the debtor.

17    ". . . *on its own behalf*."[19]

18    No.  OneWest respectfully insists that it never made this claim, never implied it, never intended to

19    make it or imply it, *and would not have benefited from making it*.  The debtor knew better:  the

20    debtor had already submitted a document in which Freddie Mac was identified as the owner of the

21    loan.  The Court obviously cannot be responsible for knowing every detail of every document

22    filed, and to the extent that the Court assumed that OneWest was the owner, OneWest apologizes.

23    But that understandable misapprehension was not the result of any misrepresentations by

24    OneWest.

25

26

27

28

---

[18]    This all depends on OneWest's ability to enforce the note and deed of trust.  Questions about the indorsements had not arisen at this time.

[19]    Docket No. 56, filed Jan. 21, 2011, p. 7 of 8 (emphasis added).

1    Likewise, in the memorandum decision, Docket No. 68, filed May 26, 2011, the Court

2 inaccurately paraphrases Boyle's testimony. The Court states, "During trial, however, the witness

3 [Boyle] candidly testified that OneWest was not the secured creditor. . . ."[20] A review of the

4 transcript shows that Boyle did not say that OneWest was not the secured creditor. He did say, as

5 the court noted, that OneWest was a servicer. And Boyle, a layman, could not be expected to

6 articulate the UCC rules for negotiable instruments. But as a legal matter, OneWest could be (and

7 is) both secured creditor and servicer.

8    **5.    <u>The discrepancies regarding the note are document-management problems</u>.**

9    As the declaration of Suchan Murray explains, different copies of the promissory note

10 made at different times exist in different locations throughout the bank. Specifically because the

11 original note is safeguarded, it took a long time – much too long – to get a copy of the note as it

12 exists currently. When the loan was originally made, it was certified as "true and correct" and

13 then imaged. That copy was submitted with the proof of claim. When the loan was transferred to

14 IndyMac Bank, it was indorsed to IndyMac Bank. As it happens, it was indorsed on a separate

15 allonge rather than on the note itself. The note was imaged again. Finally, IndyMac Bank, F.S.B.

16 indorsed the note in blank and the original note was put into a collateral file for safekeeping. That

17 collateral file was relatively inaccessible, for good reason.

18    So when a declaration authenticated a copy of the note as "a true and correct copy," it

19 meant, "a true and correct copy of the note available to me," and was not "a true and correct copy

20 of the note in its present form." Those discrepancies are unfortunate indeed, and OneWest has

21 implemented additional procedures to avoid these inaccuracies. Again, OneWest apologizes for

22 presenting true and correct copies of the note at different stages of its negotiation and transfer.

23 **6.    <u>Mistakes should not give rise to sanctions</u>.**

24    The key mistake that OneWest made is that it did not file a complete copy of the

25 promissory note, fully indorsed, when it filed its proof of claim. Mistakes are regrettable and

26

27

28

---

[20]    Docket No. 68, p. 18 of 25.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

769142.04/SD                                    -13-

1    infuriating.  They are also, ultimately, inevitable.  They are not, however, evidence of

2    misrepresentation or a disregard of the importance of the duty of candor.

3         The debtor made a number of inaccuracies.  The debtor submitted Schedule A showing

4    that the nominal amount of the secured claim is $817,592.34 instead of the correct $408,796.17.[21]

5    The debtor claimed that the amounts owing to IndyMac Mortgage Services were unliquidated,

6    when they clearly were liquidated (as evidenced by the fact that the debtor included the liquidated

7    amounts).[22]  Indeed, the debtor claimed that *every* unsecured claim, with one exception, was either

8    unliquidated (with an accompanying number) or disputed.[23]

9         Likewise, in her oppositions to OneWest's motions for relief from stay, the debtor claimed

10    that the property in question was "single asset real estate" as defined in section 101(51B) of the

11    Bankruptcy Code.[24]  A casual review of the statute shows that that assertion is wrong.  The

12    definition excludes residential real property with fewer than four units.  It includes property that

13    generates "substantially all of the gross income of a debtor," clearly not the case for Mrs.

14    Arizmendi.  If OneWest had brought this mistake to the debtor's attention, and the debtor had

15    persisted in the allegation, sanctions under Fed. R. Bankr. P. 9011 might have been appropriate.

16         Whether these errors were made by Mrs. Arizmendi or her counsel is unimportant.

17    Whether they were honest mistakes or computer-software glitches or aggressive strategies is

18    unimportant.  OneWest does not believe that they reflect any intent to deceive on the part of the

19    debtor or her counsel.  OneWest's presentation of an incomplete record reflect many of the same

20    pressures and considerations.  The parties and their lawyers try to balance perfect accuracy and

21    importance to the overall dispute and dollars at issue and the time and dollars needed to address.

22    Striking the wrong balance does not suggest actual deception or an intent to deceive.

23

24    [21]  Docket No. 1, p. 8 of 60, filed Dec. 16, 2009.
    [22]  The debtor also scheduled the sole secured claim incorrectly, listing IndyMac Mortgage

25    Services twice and separating its claim.  (Docket No. 1, filed Dec. 16, 2009, p. 13 of 50.)
    Relying on the debtor's schedules, OneWest then repeated this error in its second motion for

26    relief from stay, listing IndyMac Mortgage Services (i.e., itself) as the holder of a second lien.
    It even named itself as a respondent.  Docket No. 26, filed Sep. 1, 2010, pp. 1–2; Burnett

27    Declaration, Docket No. 26-1, filed Sep. 1, 2010, p. 2 of 4, paragraph 10, and Exhibit G
    thereto, Docket No. 26-2, p. 32 of 37.

28    [23]  Schedule F, Docket No. 1, pp. 15–16 of 50, filed Dec. 16, 2009
    [24]  Docket No. 19, filed Apr. 12, 2010, p. 3 of 3; Docket No. 29, filed Sep. 15, 2010, p. 3 of 3.

**7.    Conclusion**

OneWest consistently and accurately stated that it was the beneficiary under the deed of trust in question and the "secured creditor," the party with the right to payment from, the party with the claim against, the debtor and with the right to enforce the note and deed of trust under state law.  Although OneWest did not do a good job of explaining this, its filings were sufficient to demonstrate this on a prima facie basis.  The mistakes in submitting out-of-date copies are very regrettable, OneWest apologizes to the Court and the debtor, and OneWest is committed to doing a better job.  But the inadequacies were not directly relevant to OneWest's primary assertion – that it held an undersecured claim and was entitled to relief from the automatic stay.  OneWest respectfully submits that the mistakes regarding the document production do not warrant sanctions.

Dated:  July 15, 2011                                    ALLEN MATKINS LECK GAMBLE
                                                                    MALLORY & NATSIS LLP


                                                         By:        /s/ Robert R. Barnes
                                                                    ROBERT R. BARNES
                                                                    Attorneys for Secured Creditor
                                                                    OneWest Bank, FSB