ROBERT R. BARNES (BAR NO. 144881)
JOSHUA A. DEL CASTILLO (BAR NO. 239015)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: bbarnes@allenmatkins.com
        jdelcastillo@allenmatkins.com

Attorneys for Secured Creditor
OneWest Bank, FSB

# UNITED STATES BANKRUPTCY COURT

## Southern District of California

| | |
|---|---|
| In re<br><br>JESSIE M. ARIZMENDI,<br><br>Debtor. | Case No. 09-19263-PB13<br><br>Chapter 13<br><br>DECLARATION OF SUCHAN MURRAY IN SUPPORT OF RESPONSE OF ONEWEST BANK, FSB TO ORDER TO SHOW CAUSE<br><br>[Response of OneWest Bank, FSB to Order to Show Cause and Request for Judicial Notice filed concurrently herewith]<br><br>Date: July 29, 2011<br>Time: 10:00 a.m.<br>Dept: 3<br>Judge: Hon. Laura S. Taylor |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

900110.02/LA

## DECLARATION OF SUCHAN MURRAY

I, Suchan Murray, declare as follows:

1. I am Assistant Vice President, Bankruptcy at OneWest Bank, FSB ("OneWest"). I make this Declaration in support of OneWest's Response to this Court's June 14, 2011 Order to Show Cause (the "OSC"). As a Vice President at OneWest, I have extensive personal knowledge regarding the operations of the bank addressed in the Court's OSC, including, in particular, its past and present policies and procedures for retrieving, verifying, and submitting information and relevant documentation to courts and parties in bankruptcy proceedings. As part of my responsibilities, I assist in the administration and supervisions of OneWest-owned or serviced mortgage loans, and real properties implicated in bankruptcy proceedings. I have reviewed the documents relevant to the Court's OSC, and have personal knowledge of the matters contained herein and could testify competently if called to do so.

2. OneWest maintains a database of loan documents, including promissory notes, deeds of trusts, assignments, and related documents that have been "imaged"; that is, scanned into a digital format for electronic retrieval and transmission. Some of the records present within OneWest's database of imaged loan documents were created by IndyMac Bank, F.S.B. and entity from whom OneWest purchased select assets (including loans and loan servicing rights) indirectly out of Federal Deposit Insurance Corporation receivership. Documents retained in OneWest's database of imaged documents are occasionally transmitted electronically or "uploaded" to counsel representing the bank in foreclosure, bankruptcy, and other proceedings.

3. With respect to promissory notes, including the promissory note in issue here, it is possible for an imaged copy of a note not to bear an endorsement in blank while the original, hard copy of the note is so endorsed. This is largely an artifact of timing, and

the procedures for scanning materials into OneWest's database of imaged documents. Specifically, at the time a mortgage loan closes, the borrower executes the original promissory note, which is transmitted to the bank after the close of escrow. Upon receipt, a certified copy of the promissory note is made, for placement into what is commonly referred to as the "loan file" or "origination file." This certified copy is also scanned into OneWest's database of imaged documents. Notably, however, at the time a certified copy is placed into the "loan file" or "origination file" and scanned into OneWest's database of imaged documents, it commonly does not bear any endorsement because, at the time of scanning, the original promissory note itself has not been endorsed. After the certified copy of the note is made, the bank's post-close group creates a "collateral file," into which all original loan documents, including promissory notes, are deposited, and prepares and executes all appropriate allonges, assignments, or endorsements. The "collateral file" is maintained by a proper custodian of records. In the present matter, OneWest maintains a "collateral file" that includes all of the original documents relating to the loan in issue, including the original, endorsed promissory note, in its capacity as servicer for FreddieMac.

4. If and when a bankruptcy is filed that involves real property implicating a loan owned or serviced by OneWest, OneWest engages counsel for the bank, and transmits to its counsel all documents available in its database of imaged documents. It is therefore possible for OneWest's bankruptcy counsel to receive the certified, imaged copy of a promissory note, rather than a physical copy of the original promissory note itself. If this were to occur, as here, the certified, imaged copy of the promissory note would differ from the original in that the certified, imaged copy would not bear the endorsement in blank affixed to the original.

5. OneWest's process for retrieving, verifying, and producing relevant information to counsel, courts, and parties has been refined since late 2010 in an effort to ensure that relevant loan documents presented in court proceedings are as up-to-date and accurate as possible. However, these refinements were commenced after the period in issue in the Court's OSC. As a consequence, in the above-captioned matter, OneWest's bankruptcy counsel, McCarthy & Holthus LLP, initially received only a certified, imaged copy of the promissory loan in issue, which did not bear an endorsement in blank.

6. Based upon my review of relevant bank records, it appears that the original promissory note in issue had been ordered from the "collateral file," but had simply not been received by the time OneWest's bankruptcy counsel filed their pleadings with the Court. Nonetheless, OneWest did, in fact, physically possess the original promissory note in issue at all times relevant to the Court's OSC. The bank's production to bankruptcy counsel of a certified, imaged copy of the promissory note was therefore a result of timing and its procedures at the time, not an effort to mislead the Court or present incomplete evidence.

7. The Court's OSC makes significant reference to a Declaration of Brian Burnett submitted in support of OneWest's Motion for Relief from Stay in this matter. Although Mr. Burnett is no longer with the bank, rendering it impossible to secure all information even potentially relevant to the Court's OSC, the bank's records can shed some light on the issues raised by the Court. Specifically, at the time the Declaration of Brian Burnett was executed, there was less distinction than there presently is between OneWest's Bankruptcy, Foreclosure, and Research department, which were jointly administered by two managers. Declarants for bankruptcy cases were selected from a pool of specialists within these departments, whose responsibilities included administering and/or monitoring loans and real properties implicated in bankruptcy proceedings. Any specialist serving as a

declarant was responsible for confirming the contents of his/her declaration, along with the contents of any documents submitted to a court.  Here, as the Court noted in its OSC, the Declaration of Brian Burnett attested to OneWest's position as the "beneficiary under the terms of a promissory note and/or Deed of Trust attached hereto."  While the Declaration was unclear in that it did not identify OneWest as a servicer of the relevant mortgage loan for FreddieMac, it was completely accurate in that, at the time the Declaration was executed, OneWest had been assigned the Deed of Trust securing the loan for the real property in issue here, and did, in fact, hold and possess the original, endorsed promissory note.

8.  As servicer for loans owned by FreddieMac, including the mortgage loan in issue here, OneWest has been directed pursuant to FreddieMac's servicing guidelines, a true and correct excerpt of which is attached hereto as <u>Exhibit 1</u>, to foreclose (and thus, to seek relief from the automatic stay) in its own name, rather than FreddieMac's.  This requirement may have contributed to the confusion arising from the Declaration of Brian Burnett when compared to the testimony presented by OneWest Vice President Charles Boyle.  Nonetheless, Mr. Boyle testified, accurately (at the evidentiary hearing on the Motion for Relief from stay and in a subsequent Declaration), that OneWest was both FreddieMac's servicer for the loan in issue, held and possessed the original, endorsed promissory note, and had been assigned the beneficial interest in the relevant Deed of Trust.

9.  As noted above, in late 2010, OneWest refined its procedures for retrieving and verifying the contents of documents presented in court proceedings, including in relief from stay proceedings and other bankruptcy matters.  OneWest's Bankruptcy department is presently entirely independent, and not co-managed by personnel with responsibility for other bank departments.  Bankruptcy department representatives are responsible for,

among other things, administering and/or monitoring loans and real properties implicated in bankruptcy proceedings.

10. All present Bankruptcy department representatives authorized to execute assignments, affidavits, or declarations on behalf of OneWest are required to thoroughly review and verify the contents of any document to be executed, and must now complete steps mandated by an internal checklist, whereby the representative executing an affidavit or declaration identifies the specific materials he or she has reviewed in connection with the affidavit or declaration, attests to their accuracy, and certifies his or her review of the relevant materials.

11. The above-described procedure was not in place at the time the Declaration of Brian Burnett was executed and filed. While no departments within OneWest, other than its Bankruptcy department, regularly communicate directly with the bank's bankruptcy counsel, other departments, including Foreclosure, Corporate Legal, Loss Mitigation, Collateral File Storage, and others, regularly coordinate with the bank's Bankruptcy department in order to retrieve and provide any information or documentation necessary for a given court proceeding. In addition, OneWest's present outsource vendor, LPS, acts as a liaison between OneWest and many of its bankruptcy counsel. These policies and procedures refinements are designed to ensure that OneWest personnel, including Bankruptcy department personnel, have access to all relevant documents and information, are able to verify information efficiently and appropriately, and to minimize or avoid confusion of the type identified in the Court's OSC.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 14, 2011, at Austin, Texas.

_____
Suchan Murray

# EXHIBIT 1

| Freddie Mac Single Family / Single-Family Seller/Servicer Guide, Volume 2 / Chs. 64-69: Servicing Nonperforming Mortgages / Chapter 66: Foreclosure / 66.17: Foreclosing in the Servicer's name (04/01/11) |
|---|

## 66.17: Foreclosing in the Servicer's name (04/01/11)

The Servicer must instruct the foreclosure counsel or trustee to process the foreclosure in the Servicer's name.

If an assignment of the Security Instrument to Freddie Mac has been recorded, then the Security Instrument must be assigned back to the Servicer before the foreclosure counsel or trustee files the first legal action. Refer to Section 66.18 for an explanation of first legal action.

To have the Security Instrument assigned back to the Servicer, the Servicer must submit a completed assignment with Form 105, Multipurpose Loan Servicing Transmittal, to Freddie Mac **(see Directory 9)**. Freddie Mac will execute the assignment and return it to the Servicer within seven Business Days of receiving the documents.

If the Servicer is foreclosing on a Mortgage registered with the Mortgage Electronic Registration Systems Inc. (MERS), the Servicer must prepare an assignment of the Security Instrument from MERS to the Servicer and instruct the foreclosure counsel or trustee to foreclose in the Servicer's name and take title in Freddie Mac's name according to the requirements of Section 66.54. The Servicer must record the prepared assignment where required by State law. State mandated recordings are non-reimbursable by Freddie Mac, are not considered part of the Freddie Mac allowable attorney fees and must not be billed to the Borrower.

If the Mortgage is an FHA, Section 502 GRH or VA Mortgage, then the Servicer must follow FHA, Rural Housing Service (RHS) or VA guidelines to determine in whose name the foreclosure action should be brought.

If the Servicer is foreclosing on a property in the State of Oregon, the Servicer must destroy any unrecorded assignment to Freddie Mac no later than 10 days after the date the Servicer refers the foreclosure to its foreclosure attorney or trustee. If the Borrower subsequently reinstates his or her Mortgage, the Servicer does not need to prepare a new assignment to Freddie Mac. Refer to Section 22.14 for additional information on Freddie Mac's requirements for assignments of the Security Instrument.