1                    UNITED STATES BANKRUPTCY COURT

2                    SOUTHERN DISTRICT OF CALIFORNIA

3                   JUDGE LAURA S. TAYLOR, PRESIDING

4

5    IN THE MATTER OF:              NO. 09-19263-PB

6

7    CHAPTER 13 JESSE M. ARIZMENDI

8

9

10   ORDER TO SHOW CAUSE RE: MISREPRESENTATION

11

12

13

14             REPORTER'S TRANSCRIPT OF PROCEEDING

15

16                    SAN DIEGO, CALIFORNIA

17                    FRIDAY, JULY 29, 2011

18

19   U.S. BANKRUPTCY COURT      BY COLLETTA BROOKS, CSR
     DEPARTMENT THREE           CSR NO. 12589
20   325 WEST F STREET          SAN DIEGO BANKRUPTCY REPORTERS
     SAN DIEGO, CA 92101        325 WEST F STREET
21                              SAN DIEGO, CA 92101
                                (619) 741-0933
22

23

24

25

                                                              1

```
 1   APPEARANCES:

 2

 3   FOR THE CREDITOR:

 4                       ALLEN MATKINS LECK GAMBLE MALLORY &

 5                       NATSIS LLP

 6                       BY:   ROBERT R. BARNES

 7                       501 WEST BROADWAY, 15TH FLOOR

 8                       SAN DIEGO, CALIFORNIA 92101

 9                       (619) 233-1155

10

11

12   ALSO PRESENT:

13                       JON GARCIA

14                       ELIZABETH A. BAUMEISTER

15                       RUBEN F. ARIZMENDI

16

17

18

19

20

21

22

23

24

25
```

1   SAN DIEGO, CALIFORNIA, FRIDAY, JULY 29, 2011

2

3       MS. DAHL:  YOUR HONOR, IN THE MATTER OF *JESSE*

4   *ARIZMENDI*, ORDER TO SHOW CAUSE RE: MISREPRESENTATION.

5           MAY WE HAVE APPEARANCES, PLEASE.

6       MR. BARNES:  GOOD MORNING, YOUR HONOR.  ROBERT

7   BARNES, ALLEN MATKINS, FOR ONEWEST BANK.

8       THE COURT:  GOOD MORNING.

9       MR. BARNES:  ALSO IN COURT, YOUR HONOR, ARE JON

10  GARCIA AND ELIZABETH BAUMEISTER FROM ONEWEST.

11      THE COURT:  ALL RIGHT.  THANK YOU.

12      MR. BARNES:  YOUR HONOR, I TAKE A COUPLE OF

13  MEDICATIONS THAT GIVE ME XEROSTOMIA OR DRY MOUTH.  SO IF

14  I HAVE THE COURT'S INDULGENCE, I --

15      THE COURT:  I HAVE A COLD, SO I'M DRINKING TEA.  WE

16  WILL BE MUTUALLY DRINKING DURING THE HEARING.  BUT I

17  DON'T THINK I'M GOING TO KEEP MY VOICE IF I DON'T DO IT.

18      MR. BARNES:  OKAY.  THANK YOU.

19          FIRST OF ALL, WHEN WE WERE HERE ON JULY THE

20  6TH, THE COURT EMPHASIZED THAT THE CONTINUING

21  SUBSTANTIVE DISCUSSIONS IN THE CHAPTER 13 CASE ABOUT

22  MODIFICATIONS AND THINGS LIKE THAT WERE SEPARATE, SO

23  I'LL SIMPLY GIVE A REPORT.

24      THE COURT:  SURE.

25      MR. BARNES:  THE MEDIATOR HAS BEEN SELECTED.  WE'VE

1    TALKED WITH A MEDIATOR.  WE'VE EXCHANGED INFORMATION.

2    AND WE'RE TALKING, SO THAT PROCESS CONTINUES.  THERE'S

3    NO RESOLUTION ON IT TODAY, BUT AS THE COURT NOTES,

4    THAT'S A SEPARATE ISSUE.

5         THE COURT:  I WILL TELL YOU THAT, AS I INDICATED TO

6    THE PARTIES, I DID CONTACT JUDGE BENCIVENGO AS A

7    COURTESY TO LET HER KNOW.  I THINK SHE WAS DELIGHTED.

8    SO I DON'T KNOW EXACTLY WHAT SHE'S GOING TO DO.  I

9    ACTUALLY SPOKE TO HER AGAIN YESTERDAY AT JUDGE

10   BATTAGLIA'S FORMAL ENROBING.  BUT I THINK HER INTENTION

11   IS TO --

12         YOU MIGHT WANT TO GIVE HER SOME STATUS REPORT

13   OR SOMETHING, BUT I DON'T THINK SHE INTENDS TO CALL THE

14   PARTIES IN.  I THINK SHE WILL PROBABLY LET THIS PROCESS

15   GO FORWARD IN THE BANKRUPTCY COURTS SO YOU'RE NOT

16   ENGAGING IN --

17        MR. BARNES:  RIGHT.

18        THE COURT:  -- DISCUSSIONS IN TWO DIFFERENT FORUMS.

19        MR. BARNES:  THAT'S A GOOD REMINDER, YOUR HONOR.

20   THAT HEARING IS SCHEDULED -- THAT SETTLEMENT

21   CONFERENCE -- IS FOR SEPTEMBER THE 9TH.

22        THE COURT:  RIGHT.

23        MR. BARNES:  SO WE'LL MAKE SURE THAT WE GET BACK TO

24   HER PROMPTLY --

25        THE COURT:  RIGHT.  SHE MAY VACATE IT.  I DON'T

1  KNOW.

2      MR. BARNES:  -- AND LET HER KNOW WHAT'S GOING ON.

3      THE COURT:  ALL RIGHT.  THANK YOU.

4      MR. BARNES:  YOUR HONOR, I'D LIKE TO THANK THE COURT

5  FOR THE DETAILED TENTATIVE.  IT WAS VERY HELPFUL IN SORT

6  OF TRYING TO ORGANIZE RESPONSES AND UNDERSTAND WHAT I

7  THINK THE COURT HAS DESCRIBED AS A "DISCONNECT" --

8      THE COURT:  RIGHT.

9      MR. BARNES:  -- BETWEEN THE MISTAKES THAT WERE MADE,

10 WHETHER IT'S IN THE TEXT OF THE DECLARATIONS OR IN THE

11 SUPPORTING DOCUMENTS FOR THE DECLARATIONS.

12     THE COURT:  RIGHT.

13     MR. BARNES:  THE COURT'S CONCERNS ABOUT THOSE AND

14 ONEWEST'S RESPONSE.

15     THE COURT:  I CAN SAY THAT NO ONE IS MORE DELIGHTED

16 TO SEE A BEARER PAPER THAN ME BECAUSE I UNDERSTAND HOW

17 BEARER PAPER WORKS.  AND IF I'VE GOT A DECLARATION FROM

18 SOMEONE WHO I KNOW TO BE --

19         I DON'T KNOW TO BE NOT A HUMAN BEING AND BEARER

20 PAPER, AND THEY SAID THEY'RE A HOLDER, YOU KNOW, SO --

21         BUT, AGAIN, THE POINT IS WHEN I MAKE A

22 DECISION, I WANT TO MAKE IT FOR THE RIGHT REASON.

23     MR. BARNES:  UNDERSTOOD.

24         AND JUDGE MANN HAS COMMENTED, FOR EXAMPLE, THAT

25 IN THIS ECONOMY WHEN SO MANY MOTIONS FOR RELIEF FROM

1    STAY GO WITHOUT OPPOSITION, IT'S IMPORTANT FOR SORT OF

2    THE PRIMA FACIE CASE TO BE SUFFICIENT.

3        THE COURT:  RIGHT.

4        MR. BARNES:  AND SO IN THAT CONTEXT, THE COURT SAYS:

5    YOU KNOW, DOES THE COURT HAVE THE RIGHT TO REQUIRE

6    ACCURATE INFORMATION PROPERLY PRESENTED TO THE COURT?

7    OBVIOUSLY, YOU KNOW, THE ANSWER IS YES.

8        THE COURT:  IT'S SORT OF RHETORICAL.

9        MR. BARNES:  UNDERSTOOD, YOUR HONOR.  OR LEADING.

10        THE COURT:  I GET TO DO THAT, THOUGH.

11        MR. BARNES:  UNDERSTOOD.

12            I THINK THAT THIS, YOU KNOW, I DON'T HAVE THE

13    ADVANTAGE OF HAVING SAT THROUGH THE ENTIRE ALMOST TWO

14    YEARS OF THIS CASE.  AND I DIDN'T -- WASN'T -- HERE FOR

15    THE EVIDENTIARY HEARING IN JANUARY.  SO TO SOME EXTENT,

16    I'M AT A DISADVANTAGE BECAUSE I'M RELYING ON A COLD

17    RECORD.

18            BUT IT LOOKS TO ME LIKE THE REAL, THE REAL

19    MISUNDERSTANDING OR DISCONNECT IS WHAT'S SUFFICIENT FOR

20    WHAT'S AT STAKE?  AND THAT GOES TO ONE OF THE COURT'S

21    OTHER QUESTIONS, YOU KNOW, SHOULD THE COURT CONSIDER

22    ONEWEST'S INTERNAL COSTS OF RELIEF FROM STAY?  AND THE

23    ANSWER TO THAT IS NO.  I THINK WHAT THE COURT, I THINK

24    WHAT THE PARTIES, YOU KNOW, WHETHER IT'S A CONTESTED

25    MATTER OR NOT, AND WHAT THE COURTS NEED TO EVALUATE IS,

1   GIVEN THE LIKELY DISPUTE, WHAT'S SUFFICIENT FOR THAT

2   CASE?  AND THE EXAMPLE I THOUGHT OF IN THE ORDINARY

3   MOTION FOR RELIEF FROM STAY, I THINK IT'S SUFFICIENT FOR

4   THE SECURED CREDITOR TO SUBMIT, FROM ITS BUSINESS

5   RECORDS, A CONFIRMED COPY OF THE DEED OF TRUST.  AND

6   IT'S GOT THE RECORDING INFORMATION:  THE DATE, AND THE

7   TIME, AND THE NUMBER.

8           BUT IF IT BECOMES LITIGATION OVER THAT'S NOT MY

9   SIGNATURE, OR IT WASN'T REALLY PROPERLY RECORDED, OR

10  WHATEVER AT THAT TIME, IT BECOMES NECESSARY TO GO GET A

11  CERTIFIED COPY FROM THE COURT.

12          SO THIS IS ALL ABOUT, I THINK, RAMPING UP IN

13  RESPONSE TO WHAT'S NECESSARY TO GET IN THE DOOR; WHAT'S

14  NECESSARY AS YOU PROCEED.

15     THE COURT:  LET ME SUGGEST THAT THERE'S A DIFFERENT

16  ISSUE.  I DON'T DISAGREE THAT THAT'S PERHAPS AN ISSUE,

17  BUT I THINK ONEWEST IS --

18          ONE OF THE THINGS IN YOUR DOCUMENT THAT I HAD

19  TO SMILE AT WAS YOU TALKED ABOUT:  GEE, WE'RE RESPONDING

20  TO THIS UNPRECEDENTED LEVEL OF DEFAULTS.  BUT ONEWEST,

21  WASN'T IT AN ENTITY CREATED TO ACQUIRE THESE PORTFOLIOS?

22  I MEAN, THEY ACQUIRED THE LOANS, THE SERVICING, FROM

23  INDYMAC, WHO WAS THERE BECAUSE OF THE UNPRECEDENTED

24  LEVEL OF DEFAULTS.  SO, YOU KNOW, ONEWEST IN PARTICULAR,

25  I MEAN, MY CONCERNS ARE INDUSTRY WIDE, BUT ONEWEST IS AN

1  ENTITY.  THEY'RE NOT A LITTLE OLD BANK THAT THE ECONOMY

2  CAME AND WACKED UPSIDE THE HEAD.  THEY REACHED IN AND

3  SAID:  WE'RE GOING TO, APPROPRIATELY, WE'RE GOING TO

4  MAKE A PROFIT BASED ON THIS SITUATION.  AND THEY HAVE

5  EVERY RIGHT TO DO SO.

6          BUT I THINK THAT IF YOU'RE TRYING TO MAKE THE

7  ARGUMENT THAT THIS ENTITY, FOR SOME REASON, SHOULDN'T BE

8  HELD TO AN APPROPRIATE STANDARD, I'VE GOT A PROBLEM WITH

9  IT.

10          AND I ALSO THINK THAT, YOU KNOW, I SEE MANY,

11  MANY, MANY RELIEF FROM STAYS.  I SEE MANY, MANY, MANY

12  MOTIONS.  I'VE BEEN HERE.  UNFORTUNATELY, I THINK I

13  JOINED THE COURT THE MONTH THE NUMBERS STARTED TO GO UP.

14  AND SO I'VE BEEN HERE FOR THE ENTIRETY OF THIS

15  RECESSION, DEPRESSION, BAD-THINGS-HAPPEN-TO-GOOD-PEOPLE

16  PERIOD.  SO I CAN'T TELL YOU HOW MANY OF THESE I'VE

17  SEEN.

18          THEY USE A FORM DOCUMENT.  THEY USE IT.  AND I

19  SAY "THEY" GENERALLY.  I'M GENERALIZING HERE.  AND "ALL

20  GENERALIZATIONS ARE UNTRUE, INCLUDING THIS ONE."  AND

21  THAT'S NOT ME, THAT'S TWAIN, BUT THAT'S THE PROBLEM.

22  THE PROBLEM IS WHEN DO YOU HAVE TO CUSTOMIZE YOUR

23  DECLARATION TO REALLY REFLECT THE FACTS OF THE CASE?

24  THE PROBLEM IS, USING THE SAME DECLARATION, YOU'RE GOING

25  TO GET IN TROUBLE EVERY TIME YOU DO THAT, MR. BARNES.

1    AND YOU KNOW THAT.  YOU KNOW THAT.

2        MR. BARNES:  YOUR HONOR, I WANT GO BACK JUST ONE

3    SECOND.  IT'S MY DESIRE HERE TO EXPLAIN RATHER THAN

4    JUSTIFY.

5        THE COURT:  ALL RIGHT.

6        MR. BARNES:  I REALLY WISH THAT THE FULLY ENDORSED

7    NOTE HAD BEEN ATTACHED TO THAT FIRST DECLARATION.  IF

8    THE -- THE --

9            WHAT THE COURT PROPERLY IDENTIFIES AS A "FORM

10   DECLARATION," I MEAN IT'S EVEN, IT'S EVEN UNDERSCORED BY

11   THE FACT THAT INSTEAD OF PUTTING THE NAME OF THE

12   DECLARANT IN THE WORD PROCESSING, IT'S ACTUALLY TYPED AT

13   THE TOP.

14       THE COURT:  YEAH, YEAH.  STAMPED OR SOMETHING.  I'VE

15   SEEN THEM WHERE THEY STAMPED THE ADDRESS.  I'VE HAD

16   LAWYERS IN HERE TELLING ME I SHOULD GRANT RELIEF FROM

17   STAY BASED ON A DECLARATION WHERE THE DECLARANT IS THE

18   ADDRESS OF THE PROPERTY.  YOU KNOW.  I MEAN, TRUST ME.

19   I'VE SEEN SOME ABSOLUTELY HORRENDOUS THINGS.

20           AND YOU CAN'T TELL ME THAT THE PERSON FILLING

21   OUT THIS DECLARATION --

22           I MEAN, YOU MAKE ALL THE APPROPRIATE LEGAL

23   DISTINCTIONS, AND THE SECURED CREDITOR, AND SECURED

24   LENDER, AND POINTED OUT WHEN MY LANGUAGE ISN'T AS

25   PRECISE AS IT SHOULD HAVE BEEN, BUT THE POINT IS, DO YOU

```
 1  THINK THERE'S --
 2          CAN YOU TELL ME IN ALL HONESTY THAT THE PERSON
 3  FILLING THIS OUT HAS THE SLIGHTEST NOTION WHAT IT MEANS
 4  TO BE A HOLDER, AND THAT THEY'RE REALLY MAKING --
 5          THAT WHEN THEY SAY, "SECURED CREDITOR," AND
 6  THEY SAY, "LOAN IN OUR FAVOR," THAT THEY UNDERSTAND THE
 7  SUBTLE DISTINCTIONS IN THE LAW?
 8      MR. BARNES:  THE COURT'S QUESTION ABOUT HOLDER IS A
 9  PARTICULARLY GOOD ONE.  AND, YOU KNOW, DOES CHAMAGNE
10  WILLIAMS; DOES BRIAN BURNETT; DOES WHOMEVER THE CLERK OF
11  THE WORKS IS FOR THE DECLARATION KNOW WHAT AN ARTICLE 3
12  HOLDER IS?  AND THE ANSWER IS:  I DON'T KNOW.
13      THE COURT:  I MEAN --
14      MR. BARNES:  THEY DO KNOW.  I MEAN, THEY DO KNOW
15  WHAT PHYSICAL POSSESSION MEANS.
16      THE COURT:  RIGHT.  AND I ASSUME THAT --
17          AND PHYSICAL POSSESSION IS JUST OKAY IF IT'S
18  BEARER PAPER.  THAT'S ALL THEY REALLY HAVE TO KNOW.
19      MR. BARNES:  THAT'S CORRECT.
20      THE COURT:  BUT HOW DO THEY KNOW THAT?  DO THEY HAVE
21  PERSONAL KNOWLEDGE OF THAT?  HAVE THEY EVER SEEN THIS
22  DOCUMENT?
23      MR. BARNES:  RIGHT.
24      THE COURT:  EXPLAIN THAT TO ME.  BECAUSE I CAN'T
25  FIGURE OUT HOW IT'S ANYTHING OTHER THAN AN ASSUMPTION BY
```

1    A CLERICAL PERSON FILLING IN THEIR LITTLE FORMS.

2    SOMEBODY ASKED ME TO DO THIS; THEREFORE, WE MUST HAVE

3    THE NOTE.

4        MR. BARNES:  I UNDERSTAND, YOUR HONOR.  I THINK THAT

5    IN GENERAL --

6            AND, AGAIN, THIS IS NOT, THIS IS NOT MY

7    PREFERRED FORM.  AND GOING FORWARD, IT'S NOT GOING TO BE

8    A PREFERRED FORM.

9        THE COURT:  I'M WILLING TO GIVE YOU THE BENEFIT OF

10    ASSUMING YOU WOULD NEVER HAVE DRAFTED THIS --

11        MR. BARNES:  WELL, IT -- THE --

12        THE COURT:  -- AS AN ALL PURPOSE FORM FOR ALL

13    SITUATIONS.

14        MR. BARNES:  THE -- THE --

15            IT'S IMPERATIVE TO PUT THIS IN THE CONTEXT OF

16    THIS CASE.  THE DEBTOR HAD SCHEDULED INDYMAC MORTGAGE

17    SERVICES, WHICH IS A DIVISION OF ONEWEST, HAD SCHEDULED

18    THEM AS THE SECURED CREDITOR.  ONEWEST HAD FILED A PROOF

19    OF CLAIM AS SECURED CREDITOR.  IT HAS NOT BEEN OBJECTED

20    TO.  SO, SO THE CONTEXT IS, EVERYBODY KNOWS THAT ONEWEST

21    IS "THE SECURED CREDITOR."

22            NOW, I DON'T THINK THAT THE PEOPLE AT ONEWEST,

23    YOU KNOW, FOCUS ON ARTICLE 3.  AND, HEY, WE'VE GOT AS A

24    LEGAL MATTER, I DON'T THINK THAT THEY'VE GOT, YOU KNOW,

25    WE'RE ENTITLED TO ENFORCE THE NOTE.  SEE SECTION

1  WHATEVER OF ARTICLE 3.

2      THE COURT:  SOMEBODY'S FOCUSED ON IT HOPEFULLY.

3      MR. BARNES:  WELL, THAT IS TRUE, BUT --

4      THE COURT:  I HOPE.

5      MR. BARNES:  BUT, BUT THE KEY FACT IS, THIS IS

6  ONEWEST'S BUSINESS.  THEY SERVICE LOANS FOR, THEY

7  SERVICE LOANS ON THEIR OWN ACCOUNT; THEY SERVICE LOANS

8  ON THEIR OWN BEHALF.  AND SO, AND SO, IT'S TIME TO DO UP

9  THE --

10      IT'S TIME TO FILL OUT THE DECLARATION AND PUT

11  THE APPROPRIATE EVIDENCE BEFORE THE COURT ON THE FIRST

12  MOTION FOR RELIEF FROM STAY.  AND, AGAIN, IT'S NOT LAID

13  OUT PARTICULARLY WELL, BUT THAT DECLARATION COULD SAY,

14  YOU KNOW, AS PART OF OUR ROUTINE BUSINESS PRACTICE, WE

15  HOLD THE NOTES.  WE HAVE A CUSTODIAL ARRANGEMENT WITH

16  ABC CUSTODIAN WHEN IT'S THE NOTES FOR FREDDIE MAC IN

17  THIS CASE.  THIS IS WHAT WE DO, SO --

18      THE COURT:  WELL, IT COULD, BUT DOES THAT PERSON --

19      DOESN'T THERE HAVE TO BE SOMETHING --

20      I MEAN, THAT PERSON HAS TO HAVE PERSONAL

21  KNOWLEDGE, PERSONAL KNOWLEDGE OR KNOWLEDGE BASED ON

22  BUSINESS RECORDS UNDER THEIR CUSTODY AND CONTROL.  YOU

23  COULD CERTAINLY HAVE A SYSTEM FOR WHAT YOU COULD DO.  I

24  MEAN, THE THINGS YOU COULD DO:  YOU COULD HAVE, YOU

25  KNOW, THIS WHOLE IDEA THAT YOU'VE GOT TO KEEP YOUR NOTES

1   IN YOUR VAULT.  YOU COULD HAVE JUST THE NOTE

2   AUTHENTICATED BY A SEPARATE PERSON.  THAT'S ONE THING

3   YOU COULD DO.  SO YOU HAVE TWO DECLARATIONS.  YOU COULD

4   HAVE THAT PERSON, YOU COULD HAVE SOMETHING IN EVERY ONE

5   OF THOSE FILES THAT SAYS:  THIS IS THE NOTE, AND A

6   PERSON CAN SAY BUSINESS RECORDS, AND I KNOW EVERY TIME I

7   OPEN A FILE, AND I LOOK AT THAT NOTE, I KNOW THAT'S THE

8   NOTE IN ITS FORM AS OF TODAY, ET CETERA.

9        YOU KNOW, CLEARLY THEY DON'T HAVE THIS OR

10  DIDN'T HAVE THIS.  CLEARLY, THE PERSON OPENING THAT LOAN

11  FILE DOESN'T HAVE THE SLIGHTEST CLUE.  AND HERE'S THE

12  PROBLEM:  THE PROBLEM IS, IF THAT NOTE ISN'T BEARER

13  PAPER, AND THEY ARE THE SERVICER, AND I KNOW THAT FACT,

14  AND THEN IT'S NOT AT ALL CLEAR.

15        AGAIN, AS I SAID, THEY MAY WELL BE ENTITLED.

16  THEY MAY HAVE A COLORABLE CLAIM, THE MINIMUM NECESSARY

17  TO SEEK RELIEF FROM STAY, BUT IT'S NOT BECAUSE OF THAT

18  NOTE.

19  MR. BARNES:  RIGHT.

20  THE COURT:  IT'S BECAUSE OF SOMETHING ELSE.  AND SO

21  YOU DEPRIVE ME OF THE ABILITY TO DECIDE IT FOR THE RIGHT

22  REASON.

23        AND I'M GOING TO CONFESS, I KNOW ONEWEST

24  ACQUIRED ASSETS OF INDYMAC BANK.  YOU KNOW, I CAN READ

25  THE PAPERS.  SO IT'S J.P. MORGAN CHASE AND WAUMU,

1    ONEWEST, INDYMAC.  I DON'T HAVE THAT MUCH TIME, SO THOSE

2    ARE ONES I DON'T EVEN LOOK AT REALLY.  YOU KNOW, I HAD

3    AN OPERATIVE ASSUMPTION THAT THOSE WERE GOING TO BE JUST

4    OKAY.  GUESS WHAT?  I DON'T HAVE THAT ANYMORE.

5        MR. BARNES:  UNDERSTOOD.  UNDERSTOOD.

6            PART OF THIS, PART OF THIS IS SAYING SOMETHING

7    THAT WAS TRUE WITHOUT PUTTING, YOU KNOW, THE ADEQUATE

8    FOUNDATION.  HOW DO YOU KNOW THAT WHAT YOU SAY IS TRUE?

9    AND SO, FOR EXAMPLE, THERE ARE CASES WHERE ONEWEST IS

10   NOT THE ARTICLE 3 HOLDER.  THE ARTICLE 3 HOLDER IS THE

11   INVESTOR THAT HAPPENS, THAT TENDS TO BE ON PRIVATE

12   INVESTMENTS.  THAT'S THE WAY IT IS IN THE *CARTER* CASE

13   THAT THE COURT REFERRED TO.  AND IN THOSE CASES, THEY

14   FILE PIECES OF PAPER THAT SAY, YOU KNOW, ONEWEST IS THE

15   SERVICER, DEUTSCHE BANK OR WHOMEVER IT IS --

16       THE COURT:  RIGHT.

17       MR. BARNES:  IS THE OWNER.

18           IN THIS, THIS MAY BE, THIS MAY BE FRUSTRATING

19   THE COURT, BUT IT HAPPENS TO BE TRUE:  FOR THE PEOPLE IN

20   THE TRENCHES, THAT DISTINCTION IS IRRELEVANT TO THEIR

21   DAILY WORK, WHICH IS:  COLLECT THE CHECK, CASH THE

22   CHECK, POST IT TO THE RIGHT LOAN ACCOUNT; NOW THE LOAN'S

23   GONE INTO DEFAULT, START THE FORECLOSURE PROCESS.  AND

24   AS FAR AS THEY'RE CONCERNED, YOU KNOW, THEY PULL UP THE

25   DELINQUENCY SCREEN OR WHATEVER IT IS, AND THERE'S A

1   LITTLE COMMENT IN THE CORNER:  "OWNED LOAN, OWNED BY

2   FREDDIE MAC, OWNED BY DEUTSCHE BANK."  AND BASED ON THAT

3   ANSWER, YOU'VE GOT TO LOOK UP THIS RULE SET.  AND SO,

4   AND SO, ALTHOUGH, ALTHOUGH THE DISTINCTION BETWEEN

5   ONEWEST COMING IN HERE AS THE OWNER, OR ONEWEST COMING

6   IN HERE AS THE SERVICER FOR INVESTOR, OR ONEWEST COMING

7   IN HERE AS THE "SECURED CREDITOR," ALTHOUGH THOSE HAVE

8   IMPORTANT DIFFERENCES IN CERTAIN CONTEXT, THEY'RE MOSTLY

9   NOT RELEVANT FOR MOST OF THE RELIEF FROM STAY AND THINGS

10  LIKE THAT.

11          AND IN THIS CASE, AND, AGAIN, IN THIS CASE, THE

12  DEBTOR ACKNOWLEDGED.  THEY SCHEDULED THAT ONEWEST WAS

13  THE SECURED CREDITOR.  THEY KNEW THAT FREDDIE MAC WAS

14  THE INVESTOR BECAUSE THEY HAD GOTTEN THAT PAPERWORK AS

15  PART OF THE --

16          WELL, THEY GOT THE PAPERWORK AS PART OF THE

17  HAMP.  THE DEBTOR MAY NOT HAVE KNOWN.  MS. VISSUET KNEW

18  BECAUSE SHE SIGNED OFF ON THAT DOCUMENT.  AND IT WASN'T

19  THAT DISTINCTION --

20      THE COURT:  AND I DON'T THINK --

21      MR. BARNES:  IT WASN'T ACTIVELY LITIGATED.  IT'S NOT

22  THAT IT'S NOT IMPORTANT; IT JUST WASN'T ON ANYBODY'S

23  RADAR SCREEN.

24      THE COURT:  I DON'T THINK I PARTICULARLY CARE IF

25  THEY CALL THEMSELVES A WAFFLE, IF I KNOW WHAT THE RIGHT

1   NOTE IS.

2        I MEAN, YOU KNOW, AND I DON'T DISAGREE WITH

3   YOU.  I THINK THAT THE SERVICER VERSUS THIS VERSUS THAT

4   DISTINCTION WAS THE ONE THAT --

5        I DON'T APPRECIATE BEING IN TRIAL AND FINDING

6   OUT TWO THINGS:  ONE, THAT THE WITNESS DOESN'T ACTUALLY

7   KNOW HOW MUCH WAS PAID; THAT THE EVIDENCE I HAVE IS

8   INCORRECT AS TO THE AMOUNT THAT'S BEEN PAID; AND, TWO,

9   THAT I SHOULDN'T HEAR THE WORDS "FREDDIE MAC" OUT OF

10  THE, YOU KNOW.  SO AND THAT, THAT ISSUE RESULTED IN ME

11  FIGURING OUT THE ISSUE THAT REALLY BOTHERS ME, WHICH IS

12  THE NOTE ISSUE.

13       SO I AGREE WITH YOU AS A MATTER OF LAW.  YOU

14  KNOW, IF YOU WANT TO COME IN AND SAY:  WE COULD BE ONE

15  OF THE FOLLOWING, BUT THE IMPORTANT THING IS HERE'S THE

16  NOTE.  IT'S BEARER PAPER.

17       IN THIS COURTROOM, I KNOW YOU HAVE, I KNOW

18  THERE ARE PEOPLE THAT WON'T GIVE SERVICE, YOU KNOW.  ONE

19  OF THE PROBLEMS, AND I'LL OWN IT AS A JUDICIAL SYSTEM,

20  IS THAT YOU CAN ALMOST SEE THE PINBALL EFFECT OF JUDGES

21  DOING THINGS.  THIS JUDGE WON'T GIVE YOU THIS RELIEF, SO

22  THEY'RE CHANGING IT THIS WAY.  AND THIS JUDGE WON'T GIVE

23  YOU THIS RELIEF, SO THEY'RE TRYING TO CHANGE IT THIS

24  WAY.  I'M ACTUALLY PRETTY EASY.  I JUST WANT TO SEE --

25       I DON'T WANT TO BE LIED TO.  I DON'T WANT THE

1 DOCUMENTARY EVIDENCE AND THE DECLARATORY EVIDENCE TO BE

2 AT ODDS.  AND I REALLY DISLIKE BEING SURPRISED.  THOSE

3 ARE PRETTY STRAIGHTFORWARD.

4          I UNDERSTAND HOW ARTICLE 3 WORKS, DIVISION 3 IN

5 CALIFORNIA.  I UNDERSTAND ARTICLE 9.  I WAS A LAW FIRM

6 WITH ONE OF THE NAMED PARTNERS WAS A DRAFTER OF THE

7 ORIGINAL UNIFORM COMMERCIAL CODE.  I MEAN, YOU KNOW,

8 I'VE DONE THAT WORK FOR 20+ YEARS.  SO I CONSIDER

9 MYSELF, YOU KNOW, I HAVE --

10          ONE OF MY LAST BIG CASES WAS ONE OF THE ONLY

11 REVISED ARTICLE 9 ISSUES BECAUSE THEY DID A GOOD JOB.

12 AND I WORKED WITH THE EXPERTS WHO WERE THE REPORTERS FOR

13 THE REVISED ARTICLE 9.  I MEAN, I UNDERSTAND HOW THE

14 COMMERCIAL CODE WORKS.  I'LL DO THINGS THAT I DON'T

15 THINK MOST PEOPLE WILL DO.  I UNDERSTAND HOW THE

16 FORECLOSURE SYSTEM WORKS IN CALIFORNIA.  I GRANTED MERS

17 RELIEF BECAUSE THEY'RE A BENEFICIARY, AND I HAPPEN TO

18 BELIEVE IN THAT BENEFICIARY STATUS.

19          I DON'T KNOW WHAT IT MEANS.  AND I THINK THEY

20 MAY HAVE PROBLEMS IN THE STATE COURT, BUT FOR RELIEF

21 FROM STAY PURPOSES, I'M JUST OKAY.

22          I JUST WANT TO KNOW WHAT THE FACTS ARE.  AND

23 THE ONLY REASON WE'RE HERE TODAY IS WHILE I WILL ADMIT

24 LEAVING THE BENCH AND COMING BACK ON AND LOOKING AT

25 DOCUMENTS AND TRYING TO FIGURE OUT WHAT'S HAPPENED IN

1   THIS CASE WAS SHOCKING TO ME, BECAUSE IT'S JUST AN

2   OFF-THE-CUFF --

3           WE'RE IN THE MIDDLE OF TRIAL.  I SHOULDN'T BE

4   SURPRISED.  BUT WHEN WE DRILL DOWN TO IT, AND WE GET TO

5   THE ESSENCE OF IT, AND WHAT I TRIED TO SAY IN THE

6   MEMORANDUM DECISION IS:  THEY WIN.  THEY'RE GOING TO WIN

7   IF THEY CAN GIVE ME A COHERENT STORY.  AT THE TIME OF

8   THE MEMORANDUM DECISION, I HAD, IT TURNS OUT, THREE

9   NOTES.  I DIDN'T EVEN FOCUS ON THE FIRST ONE.  I'VE GOT

10  MULTIPLE VERSIONS OF THE NOTE.  I'VE REQUIRED A COHERENT

11  RELIEF FROM STAY MOTION BASED ON SOMEBODY TELLING ME

12  THIS IS IT.  AND YOU'VE EXPLAINED WHY I DIDN'T HAVE IT

13  BEFORE, SO THEY'RE GOING TO GET RELIEF FROM STAY.

14          I'M JUST ASKING THE FUNDAMENTAL QUESTION, WHICH

15  IS:  WHY IS IT SO TOUGH TO GIVE THE COURT A COPY OF THE

16  NOTE IN THE FORM IT IS IN AT THE TIME THEY FILED THE

17  MOTION?  AND I DO NOT BELIEVE ALL, I REALLY DON'T

18  BELIEVE THAT THAT DECLARATION WAS INTENDED TO ILLUMINATE

19  THE FACTS.  YOU KNOW, YOU CAN DO THE SECURED CREDITOR

20  THEY REALLY WERE.  TECHNICALLY, YOU'RE RIGHT.  BUT I

21  DON'T KNOW ANY WAY YOU ARGUE THAT THAT LOAN IS IN FAVOR,

22  YOU KNOW.  IF YOU LOOK AT THE TERMINOLOGY, AND YOU PUT

23  IT ALTOGETHER, IT IS A DOCUMENT THAT I GUARANTEE YOU ANY

24  REASONABLE PERSON WOULD, IF YOU SAID:  DOES THIS

25  DESCRIBE THE SERVICER, OR DOES THIS DESCRIBE A DIFFERENT

18

1   KIND OF PERSON, IT DESCRIBES A DIFFERENT KIND OF PERSON.

2   AND, AGAIN, THAT LED ME, IN TERMS OF THE ASSUMPTIONS I

3   MADE, TO ASSUME A SET OF FACTS THAT WERE NOT ACCURATE.

4   THEY WEREN'T FACTS UNDER WHICH YOUR CLIENT WOULD

5   NECESSARILY LOSE, BUT THEY WEREN'T THE RIGHT FACTS.  AND

6   SO I, MAYBE I'M NOT SMART ENOUGH, BUT I WAS MISLED BY

7   THE DECLARATION.  AND I DON'T THINK --

8          I'VE READ IT.  I'VE READ IT WAY TOO MANY TIMES.

9   I DON'T THINK YOU'RE GOING TO CONVINCE ME.

10         IT, AGAIN, IT APPEARS TO BE DESIGNED TO BE AN

11  ALL-PURPOSE DECLARATION.  AND I DON'T THINK THAT WORKS

12  WHEN YOU DON'T ATTACH THE RIGHT COPY OF THE NOTE.

13  MR. BARNES:  AN ALL-PURPOSE DECLARATION WOULD HAVE

14  WORKED IF WE HAD FILED THE RIGHT COPY OF THE NOTE THE

15  FIRST TIME.  IT'S THE COMBINATION OF, IT'S THE

16  COMBINATION OF DISASTERS THAT BRING US HERE TODAY.  A

17  THIN DECLARATION, WHICH IS SIMPLY DONE TO IMPROVE THE

18  PROCESSING OF THE PAPERWORK BEFORE THIS COURT, THAT

19  COMBINED WITH I GRABBED THIS VERSION, WHICH WAS THE

20  CLOSING VERSION OF THE NOTE VERSUS THIS VERSION, WHICH

21  IS THE COPY OF THE NOTE THAT'S PRESENTLY IN THE

22  COLLATERAL FILE.  ALL THOSE, ALL THOSE, ALL THOSE EVENTS

23  COMBINE TO BRING US HERE.

24         I DID WANT TO COME BACK TO, AND THIS IS, THIS

25  IS PRIMARILY FOR MY OWN EDIFICATION BECAUSE THE COURT

1    DESCRIBED TAKING THE BREAK AT THE JANUARY EVIDENTIARY

2    HEARING, TAKING THE BREAK, THE COURT GOES BACK, READS

3    THE PAPERWORK.  HOW COME THIS IS THE FIRST TIME I'M

4    HEARING, THIS IS AFTER THE DECLARATION OF CHARLES BOYLE,

5    HOW COME THIS IS THE FIRST TIME I'M HEARING THAT, THAT

6    ONEWEST IS THE SERVICER?  AND, AND --

7        THE COURT:  WELL, LET'S KEEP IN MIND, MR. BARNES, AT

8    THAT POINT, THE NOTE I HAVE HAS NOTHING.

9        MR. BARNES:  OH, YEAH, YES.

10       THE COURT:  SO I'M RELYING ENTIRELY ON MY EDUCATED

11   GUESS, ASSUMPTION, BELIEF THAT THERE IS SOME TRANSFER

12   DOCUMENT BACK THERE THAT TRANSFERRED THIS.  AND, YOU

13   KNOW, I'M NOT SWEATING THE DETAILS.  I HAD NOT SWEAT THE

14   DETAILS PRIOR TO THAT.  NOW ALL OF A SUDDEN, I'M GOING,

15   IF THEY'RE JUST THE SERVICER, I'VE GOT TO SWEAT THE

16   DETAILS.

17       MR. BARNES:  AND THAT GOES --

18       THE COURT:  IT'S PROBABLY BEEN ENDORSED TO SOMEBODY

19   ELSE IS THE ASSUMPTION.

20       MR. BARNES:  ABSOLUTELY.  THAT GOES DIRECTLY TO MY

21   --

22           ONE OF THE PURPOSES OF THIS RESPONSE HERE IS

23   FOR ONEWEST TO ACKNOWLEDGE THAT IT DIDN'T DO A CLASS A

24   JOB.  ONE PURPOSE IS TO EXPLAIN HOW THAT UNFORTUNATE

25   THING CAME ABOUT.  ONE PURPOSE IS TO EXPLAIN TO THE

1  COURT THAT WE ARE GETTING BETTER.  AND WE ARE TRYING TO

2  RESPOND, WE ARE TRYING TO RESPOND TO THE CONCERNS

3  ADDRESSED BY THIS COURT, BY JUDGE MANN, AND SOME OF THE

4  OSC-S THAT THE COURT REFERRED TO.  AND SO --

5      THE COURT:  AND YOU KNOW WE TALK.

6      MR. BARNES:  I HAD SURMISED AS MUCH.

7      THE COURT:  YEAH.

8      MR. BARNES:  AND ONE OF THE THINGS, ONE OF THE

9  THINGS THAT THIS GOES TO IS:  WHAT IS THE COURT'S, WHAT

10  ARE THE COURT'S CONCERNS?  IN OTHER WORDS, IT WAS A BIG

11  DEAL FOR YOU TO DISCOVER, YOU KNOW, MORE THAN A YEAR

12  AFTER THE BANKRUPTCY CASE HAD FILED, AFTER TWO MOTIONS

13  FOR RELIEF FROM STAY HAD BEEN FILED, AND AT LEAST ONE

14  PRELIMINARY HEARING ON THAT, ALL OF A SUDDEN YOU FIND

15  THAT ONEWEST IS NOT THE OWNER OF THE LOAN.  ONEWEST IS

16  THE SERVICER OF THE LOAN.  SO YOU FIND THAT OUT

17  BELATEDLY.  WHAT ARE THE COURT'S CONCERNS THEN?  THE

18  REASON I ASK THIS QUESTION IS I'M TRYING TO MAKE SURE

19  THAT WHAT WE FILE IN THE FUTURE --

20      ONEWEST CAN FOLLOW ANY RULES.  WELL, ONEWEST

21  CAN MAKE A GOOD EFFORT TO FOLLOW ANY RULES IT

22  UNDERSTANDS.  IT THOUGHT THAT THIS WAS GOOD ENOUGH.  THE

23  COURT DECIDED.  BECAUSE WHAT IT SAID, ALTHOUGH POORLY,

24  WHAT IT SAID WAS ACTUALLY TRUE.  IT REALLY WAS THE

25  ARTICLE 3 HOLDER.  NOW, IT DIDN'T ATTACH EVIDENCE THAT

1    SHOWED THAT, AND IT WASN'T A GREAT DECLARATION THAT

2    SHOWED THAT, BUT IT HAPPENED TO BE TRUE.  SO, SO I'M

3    TRYING TO EVALUATE WHAT THE COURT'S CONCERNS ARE SO WE

4    CAN ADDRESS THEM GOING FORWARD.

5         THE COURT:  AGAIN, LACK OF PERSONAL KNOWLEDGE.  I

6    STILL DON'T BELIEVE THE DECLARANT HAD PERSONAL KNOWLEDGE

7    TO ALL THE FACTS SET FORTH IN THE DECLARATION BECAUSE

8    THE DECLARANT COULD ONLY AUTHENTICATE A COPY OF THE

9    DOCUMENT IN ITS FILE.  AND WHILE IT DOESN'T TEMPORALLY

10   SAY THIS IS IT, THAT'S THE CLEAR IMPLICATION.  THE

11   IMPLICATION MADE IS THAT THE NOTE ATTACHED IS THE NOTE,

12   THE OPERATIVE NOTE, AT THAT TIME ON WHICH I SHOULD BE

13   BASING DECISIONS.  SO YOU'VE GOT THE WRONG COPY OF THE

14   NOTE.  AND IT'S PUT THERE BY A PERSON WHO SAYS THEY HAVE

15   PERSONAL KNOWLEDGE, THEY KNOW WHAT'S GOING ON, THEY

16   DON'T.  SO YOU'VE GOT BOTH THE WRONG DECLARANT GIVING

17   EVIDENCE THAT IS, WELL, LET ME PUT IT THIS WAY:  THE

18   DECLARANT EITHER LACKS THE PERSONAL KNOWLEDGE I NEED OR

19   THE DECLARANT.  AND THE DECLARANT IS CONCURRENTLY

20   CREATING AN IMPRESSION THAT THAT NOTE IS THE NOTE.  SO

21   THE ONLY THING THEY HAD PERSONAL KNOWLEDGE OF WAS WHAT

22   WAS IN THE FILE, AND THAT THE FILES AREN'T UPDATED.  SO

23   YOU NEED TO HAVE THE RIGHT COPY OF THE NOTE.  AND IF

24   THAT REQUIRES TWO DECLARATIONS BECAUSE YOU DON'T WANT TO

25   LET THEM OUT OF THE VAULT, FINE.  I WORKED FOR BANKS FOR

1   A LOT OF YEARS.  I NEVER THOUGHT IT WAS PARTICULARLY

2   DIFFICULT TO, YOU KNOW, YOU GET THESE FILES, AND THEY'VE

3   GOT EVERYTHING IN THEM.  THEY'RE NOT UPDATING THEIR

4   FILES.  THAT'S AN INTERNAL COST THEY'VE CHOSEN NOT TO

5   ABSORB.  SO THEN YOU HAVE A SECOND DECLARANT WHO'S THE

6   PERSON WHO SAYS:  I'M THE PERSON THAT HAS THE NOTES.

7   HERE'S THE NOTE.  THAT'S EASY.

8           THE SECOND PIECE OF THIS IS, AGAIN, IN READING

9   THE TOTALITY OF THE DOCUMENT, I REALLY DON'T CARE.  AT

10  SOME LEVEL YOU WANT TO KNOW MORE, BUT I GUESS AT THE END

11  OF THE DAY, I UNDERSTAND THAT THE LABELS AREN'T THE MOST

12  IMPORTANT THING.  IT'S ARE THEY A HOLDER OR NOT.  AND IF

13  THEY'RE NOT A HOLDER, ARE THEY A NON-HOLDER IN

14  POSSESSION WITH RIGHTS OF A HOLDER?  SO I CAN GO THROUGH

15  THAT BUCKET OF ENFORCEMENT RIGHTS AND DETERMINE THAT

16  IT'S SUFFICIENT.  YOU'VE GOT THE MERS ASSIGNMENT OF THE

17  BENEFICIAL INTEREST, WHICH IS ANOTHER DOCUMENT THAT,

18  LET'S FACE IT, THAT'S, YOU KNOW, THEY ALWAYS PURPORT TO

19  ASSIGN THE NOTE, AND WE ALL KNOW THAT THAT'S A --

20      MR. BARNES:  I'M SORRY?

21      THE COURT:  THEY ALWAYS PURPORT TO ASSIGN THE NOTE.

22  AND THEY DON'T HAVE ANY RIGHTS TO ASSIGN THE NOTE.  SO

23  I'VE WONDERED FOR FOUR YEARS WHY THAT SENTENCE IS IN

24  THERE.  MAYBE THEY HAVE RIGHTS UNDER A LAW OTHER THAN

25  CALIFORNIA, BUT MERS DOESN'T HAVE ANY RIGHT TO TRANSFER

1    THE NOTE OR RIGHTS THEREIN.  ALL IT CAN TRANSFER IS THE
2    BENEFICIAL INTEREST.
3            AND WE RELY ON THAT DOCUMENT AS THE ONLY BASIS
4    FOR STANDING A COLORABLE CLAIM IN MANY CASES, BUT WHEN I
5    HAVE A DISCONNECT --
6            THOSE DOCUMENTS ARE CLEAR THAT MERS HAS THE
7    RIGHT TO TRANSFER ANYTHING, NUMBER ONE.
8            NUMBER TWO, MERS IS A CREATURE OF THE NOTE
9    HOLDER.  SO MERS DOESN'T HAVE, NO MATTER THAT YOU'VE
10   ASSIGNED THEM SORT OF THE ADMINISTRATIVE PIECE OF A
11   BENEFICIAL INTEREST, YOU'VE REALLY BIFURCATED BENEFICIAL
12   INTEREST IN THE TRUST DEED UNDER CALIFORNIA LAW, WHICH
13   IS THE BENEFICIAL INTEREST.  IT'S THE LEGAL FICTION THAT
14   WE HAVE THE TRUSTEE, WHO ACTUALLY HAS SOME RIGHTS.
15           SO WE HAVE THIS LEGAL FICTION.  I'LL USE THE
16   TERM "BENEFICIARY."  THE BENEFICIARY HAS THE RIGHTS TO
17   PAYMENT; AND THE BENEFICIARY HAS THE RIGHTS OF
18   ENFORCEMENT.  AND OUR LAW ALL SPEAKS TO THE FACT THAT
19   THE BENEFICIARY CAN ENFORCE; THE BENEFICIARY CAN DO.
20           WHAT MERS HAS IS ALL THAT ADMINISTRATIVE PIECE.
21   AND TO ASSIGN IT, MY PERSONAL BELIEF IS IF I WERE TO
22   REALLY TO DRILL DOWN AND BEAT ON THAT, THEY HAVE TO HAVE
23   SOMEBODY TELL THEM TO DO THAT.  I DON'T THINK MERS COULD
24   SAY:  YOU KNOW WHAT?  WE'RE REALLY TIRED OF THIS.  WE'RE
25   GOING TO ASSIGN EVERYTHING TO MR. ARIZMENDI WHO'S

1   SITTING THERE JUST BECAUSE HIS NAME IS "A," AND HE'S

2   ALPHABETICALLY THE FIRST PERSON IN THE COURTROOM.

3          SO EVEN WITH THAT, THAT DOESN'T SOLVE THE

4   PROBLEM.  BECAUSE IF I DON'T KNOW WHO IS THE HOLDER, WHO

5   REALLY HAS THE RIGHTS TO CONTROL THE NOTE, I CAN'T BE

6   SURE THAT MERS, I CAN ASSUME, BUT I CAN'T BE SURE THAT

7   MERS WOULD DO IT.

8          SO IT ALL GOES BACK TO IF YOU HAVE A SITUATION

9   FOR ME, AND, AGAIN, I'LL BE HONEST, I'M EASIER THAN SOME

10  PEOPLE.  I DON'T WANT YOUR ORIGINAL NOTES IN MY

11  COURTROOM.  ALTHOUGH, THIS IS MAKING ME THINK, AND THIS

12  IS PARTICULARLY SCARY, THAT THAT WASN'T AS BAD AN IDEA

13  AS I THOUGHT IT WAS WHEN I FIRST SAID NEVER.

14         I DON'T WANT YOUR NOTES.  I WANT COPIES.  I

15  WANT DECLARATIONS.  I WANT THE SYSTEM WE HAVE.  BUT THE

16  SINGLE MOST IMPORTANT THING TO ME IS THAT SOMEONE WHO

17  HAS REAL PERSONAL KNOWLEDGE SAY:  THIS IS THE NOTE.  AND

18  IF THE NOTE, ON ITS FACE, DOESN'T HAVE THE CHAIN OF

19  ENDORSEMENTS THAT EXPLAIN WHY, HOW IT GOT TO THAT

20  PERSON, IT'S NOT BEARER PAPER, OR IT'S LACKING

21  ENDORSEMENTS, THEN YOU HAVE TO HAVE MORE.  THEN YOU HAVE

22  TO TELL ME WHY.  BUT THE FUNNY THING IS, MOST OF THESE

23  NOTES SOMEPLACE BACK THERE HAVE AN ENDORSEMENT IN BLANK

24  OR AN ENDORSEMENT TO THE PARTICULAR PERSON ENFORCING

25  THEM.  AND SO FOR ME, JUST GIVE ME THE RIGHT NOTE.

1      MR. BARNES:  ONE OF THE DIFFICULTIES OF THE ONEWEST

2    RESPONSE IS THAT WE DON'T REALLY DISAGREE WITH ANYTHING

3    THE COURT SAYS.  IT IS IN OTHER COURTS YOU LOOK AT THE

4    EVIDENCE THAT WAS AVAILABLE.  ONEWEST WAS, BY ASSIGNMENT

5    FROM MERS, AT THE TIME, THE BENEFICIARY UNDER THE DEED

6    OF TRUST.  AS THE COURT NOTES IN CALIFORNIA --

7          THE COURT PROBABLY IS AWARE THERE IS ALL THIS

8    SHOW-ME-THE-NOTE LITIGATION IN THE STATE AND FEDERAL

9    COURTS.  AND THE CALIFORNIA ANSWER, THE CONSISTENT

10   CALIFORNIA ANSWER, IS UNLESS THERE'S SOME REASON TO

11   THINK THAT THERE'S A DISPUTE ABOUT THE NOTE, THE

12   BORROWER DOESN'T HAVE THE RIGHT TO SAY:  SHOW ME THE

13   NOTE.

14         WHAT'S IMPORTANT FOR PURPOSES OF ENFORCING THE

15   DEED OF TRUST IN CALIFORNIA IS THE BENEFICIARY UNDER THE

16   DEED OF TRUST.  SO WE'VE GOT THE RIGHT BENEFICIARY ON

17   THE DEED OF TRUST.  IT'S, YOU KNOW, I MEAN, THERE ARE SO

18   MANY THINGS THAT WE COULD HAVE DONE DIFFERENT THAT WOULD

19   HAVE ALLEVIATED THIS PROBLEM.  BUT WE COULD HAVE OMITTED

20   THE NOTE.  WE COULD HAVE SAID BECAUSE THE DEED OF TRUST

21   WOULD HAVE REFERRED TO THE NOTE.  IT WOULD HAVE REFERRED

22   TO THE DOLLAR AMOUNTS.  IT WAS SCHEDULED BY THE DEBTOR

23   --

24      THE COURT:  THAT'S AN ADMISSION.

25      MR. BARNES:  -- IN THE RIGHT AMOUNT, SO --

1      THE COURT:  AND I NOT INFREQUENTLY ON THESE THINGS,

2  EVEN WHEN THERE'S A PROBLEM, IF THERE'S AN ADMISSION,

3  I'LL GO BACK ON AN UNOPPOSED MOTION AND LOOK AND SEE IF

4  THERE'S AN ADMISSION, AND I'LL GIVE YOU YOUR ORDER.

5      MR. BARNES:  WELL, BUT SO --

6      THE COURT:  I'M NOT LOOKING FOR PROBLEMS.  I JUST

7  AM, YOU KNOW.

8      MR. BARNES:  I DON'T THINK THAT THIS COURT IS GOING

9  TO SEE THIS DECLARATION FROM ANYBODY THAT MCCARTHY &

10  HOLTHUS OR ALLEN MATKINS TALKS ABOUT.  WE'RE SPREADING

11  THE GOSPEL THAT THIS IS NOT THE WAY TO DO IT.  BUT,

12  AGAIN, SO IT'S NOT THE WAY TO DO IT.  IT WAS --

13          THE FACT IS, WE RELIED TO SOME EXTENT, ON THE

14  ADVERSARY SYSTEM.  WE HAD COMPETENT COUNSEL ON THE OTHER

15  SIDE.  WE FILED THIS DECLARATION.  AND IF YOU LOOKED AT

16  THIS DECLARATION, IF SOMEBODY HAD OBJECTED TO THIS

17  DECLARATION, YOU KNOW, PERSONAL KNOWLEDGE WOULD HAVE

18  BEEN FINE; FOUNDATION WOULD HAVE BEEN FINE; YOU KNOW,

19  ALL THOSE THINGS.  COUNSEL HAD THE SAME ABILITY THAT THE

20  COURT HAS TO LOOK AT THE NOTE AND SAY:  WELL, WAIT A

21  MINUTE.  YOU SAY YOU'RE ONEWEST.  I LOOK AT THIS

22  PROMISSORY NOTE.  I SEE THAT IT'S PAYABLE TO PAYEE.  ON

23  THE FRONT OF THE PAGE IS PACIFIC BANK MORTGAGE.  I SEE

24  THAT IT'S ENDORSED TO INDYMAC BANK, FSB.  ONEWEST, HOW

25  IS IT THAT YOU ARE ASSERTING THE RIGHTS OF INDYMAC BANK

1    AT THAT POINT BASED ON THE PAPER?  IT WASN'T AN ISSUE.

2    NOBODY BROUGHT IT UP.  WE WENT THROUGH A MOTION FOR

3    RELIEF FROM STAY.  THERE WAS A VIGOROUS OPPOSITION TO

4    IT.  THIS IS THE FIRST ONE THAT WAS BROUGHT IN APRIL.

5    THERE WAS A VIGOROUS OPPOSITION TO IT.  THERE WAS THE,

6    THERE WAS THE, YOU KNOW, HEY, SHE'S AN ELDERLY WOMAN.

7    GIVE HER A BREAK.  THERE WAS THE WE'VE-BEEN-WORKING-ON-A

8    MODIFICATION, SEE THE LITIGATION THAT'S GOING FORWARD IN

9    FEDERAL DISTRICT COURT.  HEY, THERE'S A FAIR AMOUNT OF

10   MATERIAL IN THE OPPOSITION, SORT OF, ABOUT THE ENTIRE

11   MORTGAGE CRISIS NATIONWIDE GENERALLY.  SO THERE WAS A

12   VIGOROUS OPPOSITION FOR MOTION FOR RELIEF FROM STAY.

13   WITH NO, WITH NOBODY CARING ABOUT, AND THAT'S ON BOTH

14   SIDES.  I THINK YOU CAN SAY, YOU KNOW, SHAME ON ME

15   BECAUSE I'VE GOT THE BURDEN OF PROOF, AND I DON'T

16   NECESSARILY DISAGREE WITH THAT, BUT IT WASN'T AN ISSUE.

17   SO WE GO THROUGH THAT APPROVED FORM OF DECLARATION.  IT

18   DOESN'T DRAW ANY OBJECTION FROM THE OTHER SIDE.  AND WE

19   FILE THAT EXACT SAME FORM AGAIN.  AND IT DOESN'T DRAW

20   ANY OBJECTION FROM THE OTHER SIDE.  SO AND I DON'T

21   THINK --

22          AND THE COURT, I UNDERSTAND, THE COURT SEES

23   MAYBE THOUSANDS MORE MOTIONS FOR RELIEF FROM STAY THAN I

24   DO.  AND SEES THEM FROM MANY MORE RESIDENTIAL SERVICERS

25   THAN I DO.  I DON'T THINK THAT THESE DECLARATIONS ARE

1   DRAMATICALLY DIFFERENT FROM A LOT OF WHAT THE COURT

2   SEES.

3        THE COURT:  SADLY, THAT WOULD BE TRUE.

4        MR. BARNES:  WELL, AND, AGAIN, I'M NOT PUTTING THAT

5   AS JUSTIFICATION, JUST EXPLANATION.

6        THE COURT:  WELL, YOU SHOULD PROBABLY REMEMBER I

7   HAVE A TEENAGER.  SO I'M PRETTY DIALED INTO THE JUST

8   BECAUSE EVERYBODY ELSE DOES DOESN'T MAKE IT RIGHT.

9        MR. BARNES:  UNDERSTOOD.  UNDERSTOOD.

10          BUT IT DOES GIVE YOU SOME INSIGHT INTO WHAT

11   YOUR TEENAGER IS UP TO.

12        THE COURT:  NO, NOT MY TEENAGER.

13        MR. BARNES:  SOMETIMES IT DOES; SOMETIMES IT

14   DOESN'T.

15          SO, SO, AGAIN, IT IS A, I WOULD DESCRIBE IT

16   MOST CHARITABLY AS AN INCOMPLETE JOB, BUT IT'S GOOD

17   ENOUGH FOR 95 PERCENT OF THE TIME.  AND IT'S GOOD

18   ENOUGH.  WE HAVE FORMS FOR MOTIONS FOR RELIEF FROM STAY.

19   IN THE CENTRAL DISTRICT, THE COURT OFTEN REQUIRES YOU TO

20   USE THE FORMS.  THE PURPOSE OF THE FORMS IS TO ENHANCE

21   THE EFFICIENCY OF THE PROCESS.  CHECK THIS BOX; CHECK

22   THIS BOX; CHECK THIS BOX SO YOU KNOW WHAT YOU'RE

23   SUPPOSED TO DO.

24          NOW, IF, IF THIS COURT OR ANY OTHER COURT SAYS:

25   I REALLY WANT A DECLARATION FROM THE DEUTSCHE BANK

1    CUSTODIAN TO ACCOMPANY EVERY MOTION FOR RELIEF FROM STAY

2    THAT COMES IN HERE, WE'LL DO IT.  JUDGE MANN HAS SAID

3    SHE DOESN'T WANT A COPY OF THE 300-PAGE POOLING AND

4    SERVICING AGREEMENT, WHICH ACTUALLY PROVES THE EVIDENCE

5    THAT ONEWEST IS THE SERVICER FOR THAT.

6        THE COURT:  RIGHT.

7        MR. BARNES:  SO WE CAN FILE AS MUCH OR AS LITTLE

8    PAPER AS ANY COURT ESTABLISHES.  IN OTHER COURTS, IT IS

9    I'M NOT GOING TO --

10           WELL, IN OTHER COURTS, IT IS NOT NECESSARY TO

11   ATTACH TO THE PROOF OF CLAIM OR THE MOTION FOR RELIEF

12   FROM STAY THE FULLY ENDORSED NOTE.  IT WILL BE ENOUGH TO

13   JUST ATTACH A COPY OF THE NOTE, WHICH ESTABLISHES, WHICH

14   ESTABLISHES THE DEBTOR'S INDEBTEDNESS.  DOESN'T,

15   NECESSARILY, YOU KNOW, TIE THE KNOT.  IT DOESN'T

16   NECESSARILY BRING IT TOGETHER.  AND THAT'S ENOUGH TO GET

17   STARTED.

18           AND SO, AGAIN, I MEAN, I LOOK AT THIS, AND I

19   UNDERSTAND MAYBE TOO WELL HOW WE GOT HERE.  IT -- IT --

20   IT -- IT -- IT'S JUST PEOPLE TRYING TO PROCESS THIS

21   THING IN A WAY THAT ALLOWS THEM TO MOVE FORWARD ON AN

22   EFFECTIVE WAY.  AND THAT'S NOT, I DON'T THINK OF THAT AS

23   COST SAVINGS SO MUCH AS I DO COMMON SENSE.

24           YOU KNOW, LET'S FIGHT ABOUT WHERE THERE ARE,

25   WHERE THERE ARE DISAGREEMENTS.  AND IN THAT REGARD, THE

1   COURT HAS COMMENTED ABOUT THE PAYMENT HISTORY, AND HOW
2   COME YOU CAN'T TELL ME WHAT PAYMENTS YOU'VE RECEIVED.
3   AND THE ANSWER TO THAT, AND THIS WASN'T DEVELOPED IN
4   THE, IN THE, THIS WASN'T DEVELOPED IN THE LIVE TESTIMONY
5   OF CHARLES BOYLE, AND IT WASN'T DEVELOPED IN OUR
6   RESPONSE BECAUSE THE COURT'S OSC HADN'T REALLY FOCUSED
7   ON THE PAYMENT ISSUE VERY MUCH.  BUT BOYLE'S JOB WAS
8   TALK TO ME ABOUT THE POST-PETITION ARREARAGE.  BOYLE'S
9   JOB WAS NOT, WAS NOT, AS HE UNDERSTOOD IT, TALK TO ME
10  ABOUT PAYMENTS YOU'VE MADE ON THE ARREARAGE.
11      THE COURT:  HE DIDN'T HAVE ANY IDEA THAT THE
12  BANKRUPTCY PAYMENTS HAD BEEN MADE.
13      MR. BARNES:  EXACTLY.
14      THE COURT:  CLEARLY.
15      MR. BARNES:  EXACTLY.  AND IT'S, IT'S FUNNY BECAUSE
16  THE COURT --
17      THE COURT:  THE ATTORNEY SAVED HIM BECAUSE THE
18  ATTORNEYS CONCEDED THAT, YOU KNOW, THEY SAID:  "WE HAVE
19  NO REASON TO BELIEVE THOSE PAYMENTS WEREN'T MADE."  THAT
20  WOULD BE A MUCH BIGGER ISSUE IF THAT HADN'T BEEN DONE AT
21  THE HEARING.
22      MR. BARNES:  I UNDERSTAND.  I UNDERSTAND.
23          AND IT'S NOT COINCIDENTAL THAT THE COURT HAS
24  NOT SEEN A RENEWED MOTION FOR RELIEF FROM STAY.
25      THE COURT:  I'M NOT SAYING YOU CAN'T BRING IT.

1      MR. BARNES:  NO, I UNDERSTAND.

2         BUT -- BUT -- BUT YOU'RE NOT, YOU'RE NOT GOING

3   TO SEE ONE UNTIL WE THINK WE CAN PRODUCE RELIABLE

4   NUMBERS THAT WE REALLY THINK ARE RIGHT.

5         UHM -- UHM -- UHM, BUT THE COURT COMMENTED ON

6   BOYLE'S TESTIMONY AND DESCRIBED IT AS CANDIDLY.

7      THE COURT:  THERE'S NO QUESTION HE WASN'T HIDING THE

8   BALL.  HE JUST DIDN'T KNOW.

9      MR. BARNES:  NO, BUT HE WASN'T HIDING THE BALL ABOUT

10  HIS SERVICER STATUS EITHER.

11     THE COURT:  NO.

12     MR. BARNES:  ONE OF THE THINGS, AND THIS GOES TO ONE

13  OF THE QUESTIONS, COULD ONEWEST OBTAIN RELIEF FROM STAY

14  NOTWITHSTANDING ITS SERVICER STATUS IF IT ADMITTED THIS

15  FACT?  AND THE ANSWER IS YES.  THERE IS NO SYSTEMIC

16  ADVANTAGE TO ONEWEST FROM DOING THIS ALL ONE WAY OR THE

17  OTHER.  ALL ONEWEST DOES IS FOLLOW THE INSTRUCTIONS FROM

18  ITS INVESTOR.  THE INSTRUCTIONS, AS IN THE *CARTER* CASE,

19  THE INSTRUCTIONS FROM THE INVESTOR ARE:  FILE IT IN OUR

20  NAME, FILE THE PROOF OF CLAIM IN OUR NAME.  AND THE

21  PROBLEM IN *CARTER* WAS, WELL, THE FIRST TIME THEY FILED

22  IT, IT WAS IN THE NAME OF DEUTSCHE BANK, AS IS IT SHOULD

23  HAVE BEEN.  IT WAS ONEWEST BANK AS SERVICER FOR DEUTSCHE

24  BANK.  THEN THE NEXT DOCUMENT THAT WAS FILED "AS

25  SERVICER FOR" WAS OMITTED BY THE ATTORNEY.  AND A LOT OF

```
 1   THINGS SPUN OUT OF CONTROL FROM THERE.  SO ONEWEST JUST
 2   DOES WHAT ITS SERVICER, WHAT ITS OWNERS, TELL THEM TO
 3   DO.  IT'S NOT AN ISSUE OF SAVING MONEY; IT'S NOT AN
 4   ISSUE OF BEING SECRETIVE TRYING TO OBTAIN AN ADVANTAGE
 5   AGAINST THE BORROWER OR WITH THIS COURT FROM THE FACT
 6   THAT HA, HA, HA, WE'RE THE SERVICER, AND WE DIDN'T HAVE
 7   TO TELL YOU THAT.  IT'S JUST THEY PICK UP THE DOCUMENT,
 8   AND IT SAYS, FREDDIE MAC SAYS:  "FORECLOSE IN THE NAME
 9   OF THE SERVICER."  SO THAT'S WHAT THEY DO.  THEY FILED
10   THEIR MOTION FOR RELIEF FROM STAY IN THE NAME OF THE
11   SERVICER, AND THEY JUST SAY:  HERE WE ARE.  WE'RE THE
12   SECURED CREDITOR.  WHY?  WELL --
13       THE COURT:  WITH THE LOAN IN THEIR FAVOR.  REALLY?
14       MR. BARNES:  WELL, NO.
15       THE COURT:  THEY SAID THAT, TOO.  YOU KNOW, THAT ONE
16   I'VE GOT A PROBLEM WITH.  IS THE LOAN REALLY IN THEIR
17   FAVOR?
18       MR. BARNES:  WELL, YOUR HONOR, I --
19       THE COURT:  IT CERTAINLY WASN'T ORIGINALLY IN THEIR
20   FAVOR, AND THEY'RE NOT THE OWNER OF THE LOAN, SO --
21       MR. BARNES:  NO, I -- I -- I UNDERSTAND.
22       THE COURT:  THAT ONE I FIND --
23       MR. BARNES:  I WAS NOT --
24       THE COURT:  THAT'S A LITTLE CREEPY.  I DON'T LIKE
25   THAT.
```

1       MR. BARNES:  NO, NO.  I AGREE WITH THAT.  IF
2   WILLIAMS OR WHOEVER SAID THAT BECAUSE I DON'T THINK THAT
3   WAS, I DON'T THINK THAT WAS --
4       THE COURT:  THEY BOTH SAID IT.
5       MR. BARNES:  NO, NO, BUT THE POINT IS I DON'T THINK
6   IT WAS CHARLES BOYLE.
7       THE COURT:  NO, NO, NO, NO.
8       MR. BARNES:  I THINK THAT IF YOU ASK THEM:  DOES
9   ONEWEST OWN THE LOAN?  THEY WOULD SAY NO.  THEY WOULD
10  SAY:  NO, WE'RE JUST A SERVICER.  I MEAN, WHAT THEY SAID
11  WAS, AND THIS IS, YOU KNOW, I KNEW THAT IT WAS A BAD
12  IDEA TO SAY "AND/OR" TO BEGIN WITH.  THEY SAID, AND THIS
13  IS CHAMAGNE WILLIAMS, ALTHOUGH THE EXACT SAME LANGUAGE
14  IS IN THE OTHER ONE, "SECURED CREDITOR IS THE REAL PARTY
15  IN INTEREST AS THEY ARE THE CURRENT BENEFICIARY UNDER
16  THE TERMS OF A PROMISSORY NOTE AND/OR A DEED OF TRUST."
17  WELL, THAT IS, THAT IS TRUE.  THEY ARE THE BENEFICIARY
18  UNDER THE DEED OF TRUST.  I DON'T KNOW WHAT A
19  BENEFICIARY OF A NOTE IS.
20      THE COURT:  RIGHT.  I AGREE.
21      MR. BARNES:  AND I DON'T KNOW WHAT HE THOUGHT IT
22  MEANT.
23          THE COURT, THE COURT USED THE WORD
24  "MISLEADING,"  AND THAT COMES FROM THE WORD "LEAD."  I
25  WANT TO LEAD YOU SOMEPLACE.

34

1      THE COURT:  I WAS MISLED.

2      MR. BARNES:  NO, I UNDERSTAND.

3      THE COURT:  I WAS MISLED BECAUSE I KNOW WHAT I

4  BELIEVE.

5      MR. BARNES:  I UNDERSTAND.  I WANT TO MISLEAD YOU

6  OVER HERE.  THE FACTS ARE THIS, BUT I WANT TO LEAD YOU

7  OVER HERE.  THAT'S USUALLY FOR A PURPOSE.  I WANT TO

8  LEAD YOU OVER HERE BECAUSE I'M GOING TO GET SOME

9  ADVANTAGE.  THERE'S NO, NOT ONLY IS THERE NO EVIDENCE

10  THAT THERE WAS NO ADVANTAGE TO BE GAINED BY THAT,

11  THERE'S NO REASON TO THINK THEY GOT AN ADVANTAGE.  I

12  MEAN, THE COURT'S COMMENT --

13      THE COURT:  WELL, THERE'S AN ASSUMPTION THERE.  AND

14  THE ASSUMPTION IS THAT THEY WERE IN POSSESSION OF WHAT

15  FINALLY SHOWED UP WITH THE NOTE AT THE TIME OF THOSE

16  DECLARATIONS AND INSTEAD OF THE FORM OF THE NOTES THAT

17  WERE IN THE DECLARATION.

18          I DON'T KNOW, MR. BARNES.  LET'S, LET'S CUT TO

19  THE CHASE HERE BECAUSE I'VE GOT TO DO ANOTHER HEARING.

20  I'VE GOT AN EMERGENCY HEARING AT 11.

21          I COULD DRAFT A DECLARATION THAT I THINK WOULD

22  BE MARVELOUS.  I COULD DRAFT A FORM DECLARATION WITH A

23  PDF AND FILL IN THE BOXES THAT I THINK WOULD BE

24  FABULOUS.

25      MR. BARNES:  WE'LL USE IT.

35

1          THE COURT:  YEAH, I'M NOT GOING TO DO IT.

2          I HAVE KNOWN FROM THE FIRST DAY THE WAYS I

3  PERSONALLY WOULD ADDRESS THIS.  I REPRESENTED BANKS.  I

4  DID DECLARATIONS IN THESE KIND OF SITUATIONS, GRANTED,

5  COMMERCIAL, BUT I KNOW HOW TO DO THIS.  SO, "A" I

6  BELIEVE IT CAN BE DONE.  "B," I WAS MISLED PERSONALLY.

7  I ASSUMED.  GIVE COUNSEL FOR MS. ARIZMENDI, YOU KNOW,

8  THEY SHOULD HAVE RAISED IT.  THEY HAD ASSUMPTIONS IN

9  THEIR MIND.  THEY DIDN'T.  NO ONE BROUGHT IT TO MY

10 ATTENTION.  THE UNFORTUNATE THING FOR ONEWEST IS THAT IT

11 DID COME TO MY ATTENTION.  AND ANOTHER THING MY MOTHER

12 ALWAYS USED TO SAY IS:  "I KNOW YOU'RE DOING THINGS I

13 DON'T WANT YOU TO DO; JUST MAKE SURE I DON'T FIND OUT."

14 AND THAT IS, I THINK, THE OPERATIVE ASSUMPTION OF MOST

15 JUDGES RIGHT NOW IN TERMS OF THIS CRISIS.  WE KNOW

16 CORNERS ARE BEING CUT.  WE KNOW THERE'S PROBABLY

17 IMPRECISION.  AND WE DON'T HAVE THE TIME TO DRILL DOWN

18 ON IT AND POLICE IT THE WAY, PERHAPS, WE SHOULD.

19         WE SPEND A LOT OF TIME DOING THINGS TO PEOPLE.

20 SOME PEOPLE GET IN THIS PROBLEM BECAUSE THEY MADE A BAD

21 BUSINESS DECISION.  SOME PEOPLE GET IN THIS PROBLEM

22 BECAUSE THEY MADE BAD LIFE DECISIONS.  BUT SOME PEOPLE

23 GET IN A PROBLEM WITH THESE MORTGAGES BECAUSE THEY GOT

24 SICK OR SOMEBODY DIED OR THEY'RE JUST OLD OR THEY GOT

25 DIVORCED OR THEIR KIDS GOT SICK.  AND YOU KNOW WHAT?  I

1   DON'T GET TO MAKES DISTINCTIONS IN THOSE SITUATIONS.  I

2   DON'T HAVE THE POWER TO SAY:  POOR PERSON.  THIS IS A

3   HORRIBLE THING THAT'S HAPPENING TO YOU, AND YOU'RE GOING

4   TO LOSE YOUR HOME.

5          SO THE LEAST I CAN EXPECT FROM THE LENDERS IS

6   THAT THEY RESPECT THE DIGNITY OF THESE PEOPLE, AND THEY

7   COME TO THIS COURT WITH TRUTH.  IF I FIND OUT THAT I'VE

8   BEEN MISLED; IF I FIND OUT THAT I'M MAKING A DECISION

9   BASED ON SOMETHING LESS THAN A COMPLETE SET OF FACTS,

10  I'M NOT GOING TO BE HAPPY.  I CAN'T BE HAPPY.

11         AND OUR SYSTEM DEPENDS, I'VE GOT TO TRUST THE

12  BANKS.  I -- I -- I -- I HAVEN'T DONE A SEARCH, BUT I

13  BET THERE'S MULTIPLE MILLIONS OF DOLLARS OF MORTGAGES

14  GOING THROUGH THIS COURTHOUSE EVERY MONTH FOR ONEWEST.

15  WE DO THEM QUICK.  YOU CAN EVEN SAY WE DO THEM DIRTY.

16  BECAUSE MOST OF THEM AREN'T OPPOSED.  BUT IT'S A DEFAULT

17  LIKE ANY OTHER.  WE DON'T REQUIRE A DEFAULT PROVE-UP.  I

18  HAVE TO LOOK AT THE EVIDENCE.  AND OCCASIONALLY I WILL

19  SEND BACK SOMETHING THAT SAYS, YOU KNOW, I JUST CAN'T

20  SIGN THIS ONE.  AND I ALWAYS GIVE THEM A CHANCE TO CLEAN

21  IT UP.  THE ONLY OTHER TIME I HAVE OSC'D A LENDER IS

22  WHEN, AFTER THREE OF THOSE, THEY GAVE ME THE SAME

23  DECLARATION WITH THE SAME PROBLEM, AS IN, THEY SAID ONE

24  THING AND THE DECLARATORY EVIDENCE WAS TOTALLY

25  DIFFERENT.  SO I DON'T LIKE DOING THIS.

1        SO WHAT AM I GOING TO DO ABOUT IT?  FIRST OF

2   ALL, THERE WAS NO EVIDENCE OF ANY REQUEST FOR

3   COMPENSATORY DAMAGES.  SO, AS I INDICATED IN THE OSC, I

4   DIDN'T REALLY THINK THERE WOULD BE.

5        THE QUESTION THEN IS COERCIVE DAMAGES.  FIRST

6   OF ALL, YOU'RE NOT FREE.  SO THERE IS A COERCIVE EFFECT

7   IN JUST HAVING TO GO THROUGH THIS PROCESS.  THEY HAD TO

8   PAY FOR YOUR WORK ON THIS.  AND I AM CONVINCED, BASED ON

9   YOUR REPRESENTATION AND THE REPRESENTATIONS IN YOUR

10  DOCUMENTS, THAT THEY ARE MAKING PROACTIVE AND

11  APPROPRIATE CHANGES TO PROCEDURE TO MINIMIZE THE CHANCE

12  THAT I SEE THIS IN THE FUTURE.  AND I HAPPEN TO BELIEVE

13  THAT A COERCIVE SANCTION IN ALL BUT RARE CASES INVOLVING

14  REALLY IN-YOUR-FACE BAD ACTS SHOULD BE ONE THAT THE

15  LENDER HAS, OR THE PARTIES SUBJECT TO THE ORDER TO SHOW

16  CAUSE, SHOULD HAVE A RIGHT TO AVOID.  SO I'M NOT GOING

17  TO ASSESS A MONETARY SANCTION AT THIS POINT IN TIME.

18        I'M GOING TO DO SOMETHING DIFFERENT.  AND THAT

19  IS I'M GOING TO MAKE PERFECTLY CLEAR THAT IF IN A FUTURE

20  SITUATION, A PROMISSORY NOTE, I'M GOING TO KEEP IT

21  PRETTY SIMPLE, BECAUSE I'M NOT GOING TO SAY ANY

22  MISSTATEMENT OR ANY PROBLEM THAT COMES UP.  I'LL

23  CERTAINLY REMEMBER THIS IF IT'S ONEWEST, AND IF IT'S A

24  PROBLEM, BUT IF I HAVE ANOTHER SITUATION WHERE IT COMES

25  TO THE COURT'S ATTENTION THAT A PROMISSORY NOTE WAS

1   PRESENTED AS THE NOTE WITHOUT ANY CLARIFICATION THAT

2   THERE'S ANOTHER FORM OF THE NOTE THAT'S THE ACTUAL NOTE

3   EXISTING AT THAT POINT OF TIME, THEN I WILL ASSESS,

4   AGAIN, I WILL ISSUE AN ORDER TO SHOW CAUSE.  ONEWEST

5   WILL HAVE THE RIGHT TO BE HEARD.  BUT THEY SHOULD ASSUME

6   THAT THERE WILL BE A SUBSTANTIAL COERCIVE SANCTION.  I'M

7   THINKING 25,000 TO 50,000 DOLLARS.

8       MR. BARNES:  OKAY.

9       THE COURT:  AND, AGAIN, THAT'S COERCIVE.  THEY HAVE

10  EVERY OPPORTUNITY TO AVOID IT.  IT SHOULD NEVER BE A

11  PROBLEM BECAUSE I THINK I'VE BEEN CLEAR, AND THIS IS

12  LIMITED.  I WILL PUBLISH THAT IN THE SENSE OF TELLING MY

13  COLLEAGUES, WHO MAY OR MAY NOT DO THE SAME THING.  MY

14  BELIEF IS THEY WILL, AT LEAST THE ONES WHO HAVE TALKED

15  TO ME.  WE DO TALK.

16      MR. BARNES:  UNDERSTOOD.

17          AND IN THAT REGARD, I WANT TO SORT OF LOOP

18  BACK.  THE COURT COMMENTED IN THE TENTATIVE ABOUT THE

19  OTHER OSC-S.  AND I THINK I HAVE AN UPDATE ON TWO OF

20  THEM BECAUSE I HAVE PERSONAL KNOWLEDGE ABOUT THEM.  ONE,

21  TELEBRICO WAS RESOLVED, AND THE ORDER TO SHOW CAUSE WAS

22  DISCHARGED.

23      THE COURT:  RIGHT.

24      MR. BARNES:  *CARTER* HAS BEEN CONTINUED FROM TIME TO

25  TIME.  IN *CARTER* JUDGE MANN ISSUED THE DECISION ONEWEST

1  WAS, AGAIN, DE FACTO PUNISHED BY HAVING TO PAY ALLEN

2  MATKINS RATES AS WE WENT IN TO TRY TO DO A MORE COMPLETE

3  CHAIN OF TITLE.  IT'S A 16-PAGE DECLARATION, I THINK,

4  WITH A COUPLE HUNDRED PAGES OF EXHIBITS.

5       AND I UNDERSTAND THAT THE PARTIES IN *DOBLE* OR

6  *DOBLE* OR HOWEVER THAT'S PRONOUNCED, I UNDERSTAND THE

7  PARTIES ARE TALKING, AND THAT'S ALL I CAN SAY.

8       NOW, I APPRECIATE THE COURT'S SUGGESTION,

9  STATEMENT, WARNING, HOWEVER IT'S CATEGORIZED.  I THINK

10  IT'S IMPORTANT FOR, FOR THE COURT'S CONTEMPLATION FOR

11  THE SANCTIONS, WHATEVER, FOR THE COURT'S FOCUS TO BE ON

12  WHAT'S HAPPENING HERE.  AND JUDGE MANN WILL PRESUMABLY

13  DO WHATEVER SHE THINKS IS APPROPRIATE.

14       THE COURT:  SHE WILL DO WHATEVER SHE WANTS TO DO.

15       MR. BARNES:  AND SO, YOU KNOW, IT'S BAD ENOUGH TO

16  SCREW UP AND BE PUNISHED FOR IT; IT'S HELL TO BE

17  PUNISHED TWICE FOR IT.  SO, YOU KNOW, WE'LL GET THIS

18  MESSAGE OUT.  AND THERE WILL BE AN E-MAIL THAT WILL GO

19  OUT TO ALL, YOU KNOW, FREDDIE MAC RETAINED COUNSEL THAT

20  YOU BETTER BY GOD DO THIS, AND YOU KNOW.

21       THE COURT:  AGAIN, I THINK THAT THE APPROPRIATE

22  THING IS AT SOME POINT, YOU HAVE TO HAVE A CONVERSATION.

23  WE'RE HAVING A CONVERSATION NOW.  THAT SHOULD BE THE END

24  OF THE SANCTION.  WE'VE HAD A CONVERSATION.  YOU'VE

25  CONVINCED ME THAT IT'S BEEN TAKEN SERIOUSLY.  I'M

1   RELYING ON THAT.

2            I DON'T BELIEVE THAT ANYTHING, YOU KNOW, THE

3   COURTS COULD USE THE MONEY, AND A SANCTION WOULD COME TO

4   THE COURT, BUT I DON'T BELIEVE USING MY POWER TO

5   SANCTION IN THAT WAY IS APPROPRIATE.  AND I DON'T INTEND

6   TO DO IT.  BUT AND, AGAIN, I'M NOT GOING TO SAY ANYTHING

7   DEFINITIVE BECAUSE I REALIZE THERE ARE A MYRIAD OF WAYS

8   THAT SOMETHING COULD COME BEFORE THE COURT THAT I FIND

9   OFFENSIVE.  SO WE MAY BE BACK HERE, AND I WILL CONSIDER

10  THIS IF WE ARE.

11           BUT YOU ASKED EARLIER:  WHAT DO YOU WANT?  AND

12  I'VE THOUGHT ABOUT THAT.  AND I BELIEVE THAT, AGAIN, YOU

13  DON'T HAVE TO GIVE ME THE NOTE.  YOU CAN SAY CANDIDLY IN

14  THE DECLARATION:  THIS IS THE ONE IN THE FILE, AND, YOU

15  KNOW, I HAVE PERSONAL KNOWLEDGE OR I DON'T.  I'VE HEARD

16  A RUMOR THAT WE'VE GOT SOMETHING ELSE DOWN IN THE VAULT.

17  THAT'S FINE BECAUSE THAT'S TRUE.  AND THEN IF NO ONE

18  CHALLENGES THAT, YOU'RE RIGHT; I TYPICALLY, ESPECIALLY

19  IN AN OPPOSED CASE WHERE I'M NOT DOING THE DEFAULT

20  PROVE-UP PIECE OF THIS, THAT'S FOR THE LAWYERS TO DO IN

21  MOST CASES.  SO UNLESS IT'S RIGHT IN MY FACE, OR IT'S A

22  DEFAULT PROVE-UP, I'M PROBABLY --

23           I'M NOT GOING TO BE LOOKING FOR A PROBLEM.  I

24  DON'T HAVE TIME.

25      MR. BARNES:  UH-HUH.

1      THE COURT:  I DON'T HAVE TIME.

2           AND BUT I HAVE TO ACT WHEN I FEEL STRONGLY THAT

3   THERE'S A PROBLEM, AND SO I HAVE.

4      MR. BARNES:  YOUR HONOR, UNFORTUNATELY MY DUTY OF

5   CANDOR COMPELS ME TO SAY THAT I DON'T THINK THAT

6   MR. ARIZMENDI HAS WAIVED HIS OPPORTUNITY TO SEEK

7   COMPENSATORY SANCTIONS.  I THINK THAT THE WAY THIS

8   COURT, I THINK THE WAY THIS COURT'S ORDER TO SHOW CAUSE

9   WAS TEED UP, YOU PUT A DEADLINE, WHICH AS YOU KNOW, WE

10  HAD SOME STRUGGLES WITH, BUT YOU PUT A DEADLINE FOR OUR

11  RESPONSE.  I DON'T THINK THAT THERE WAS REALLY AN

12  INVITATION --

13     THE COURT:  WELL, I'M NOT GOING TO AWARD THEM TODAY

14  BECAUSE I DON'T HAVE ANY EVIDENCE.

15     MR. BARNES:  WELL, THE POINT IS, ALL I WOULD SAY IS

16  I THINK THAT, AND I HATE TO HAVE TO SAY THIS, BUT I

17  THINK THAT THE COURT, IT NEEDS TO BE CLEAR THAT THE

18  COURT IS RESERVING THAT ISSUE.

19     THE COURT:  ALL RIGHT.

20     MR. BARNES:  WE'LL HAVE OUR DISCUSSIONS WITH, WE'LL

21  HAVE OUR DISCUSSIONS ON THE MEDIATION AND THE

22  MODIFICATION, AND IF EVERYTHING GOES TO HECK IN A HAND

23  BASKET, HE CAN COME IN AND SAY:  I THINK I'M ENTITLED TO

24  COMPENSATORY SANCTIONS IN THE AMOUNT OF "X." AND HE CAN

25  DO A PROVE-UP.  HE CAN MAKE HIS ARGUMENT, AND WE'LL

1    RESPOND, ET CETERA.  SO HE TOOK THE, I THINK HE TOOK THE
2    COURT'S ADMONITION THAT THIS WAS MOSTLY BETWEEN ONEWEST
3    AND THE COURT.  I THINK THAT HE TOOK THAT TO HEART, AND
4    I THINK THAT'S WHY HE DIDN'T PARTICIPATE NOW.
5         THE COURT:  ALL RIGHT.  THAT'S FINE.  I ASSUMED THAT
6    HE WOULD HAVE.  AND I HAVE TO GO BACK AND LOOK AT IT,
7    BUT I'LL ACCEPT YOUR --
8              I CERTAINLY DIDN'T REVIEW IT IN THAT REGARD.
9              BUT I THINK MY POINT IS THAT FOR PURPOSES OF
10   TODAY, IT IS BETWEEN THE COURT AND ONEWEST.  AND I'M
11   SATISFIED THAT THERE'S NO FURTHER NEED FOR A MONETARY
12   SANCTION AT THIS POINT IN TIME.  I'M RELYING ON YOUR
13   REPRESENTATION THAT IT'S BEEN TAKEN SERIOUSLY.  I'M
14   RELYING ON THE FACT THAT IN THE FUTURE THERE WILL BE
15   MORE OF AN EFFORT.
16             I WISH I COULD SPEAK FOR THE ENTIRE JUDICIAL
17   SYSTEM AND SAY EVERYBODY WOULD BE HAPPY IF YOU DO THIS.
18   AND THAT'S ONE OF THE REASONS I'M NOT SETTING DOWN A
19   CHECKLIST OF THINGS BECAUSE EVEN WITHIN THIS COURTHOUSE
20   I THINK WE HAVE DIFFERENCES OF OPINION IN AN INDIVIDUAL
21   CASE.  I MEAN, JUDGE MEYERS, FOR EXAMPLE, IS FIXATED ON
22   LEGAL DESCRIPTIONS.  AND SO WE HAVE LEGAL DESCRIPTIONS
23   FOR EVERYTHING.  I COULD CARE LESS.  I WANT RECORDING
24   INFORMATION.  SO, YOU KNOW, WHAT MATTERS TO ME AND WHAT
25   MATTERS TO MY COLLEAGUES IS DIFFERENT.  IT DOESN'T MEAN

1  I'M RIGHT; IT DOESN'T MEAN THEY'RE WRONG, IT'S JUST

2  DIFFERENT.

3          BUT I THINK IT IS SAFE TO SAY THAT, AGAIN,

4  PROVIDING ME WITH AN ACCURATE READ ON WHAT THE NOTE IS.

5  AND, AGAIN, GOING BACK TO BECAUSE THERE MAY BE THAT RARE

6  CASE WHERE THE NOTE IS NOT ENDORSED IN BLANK, AND THERE

7  MAY BE THAT RARE CASE WHERE YOU TOLD THE BORROWER:

8  YEAH, WE'VE GOT ALL THESE RIGHTS, AND THEY SIGNED OFF ON

9  IT, BUT THEY REALLY DON'T.  AND IN THE WORLD THAT WE

10  CURRENTLY OPERATE IN, I MEAN, WE COULD EVEN GET INTO THE

11  WHOLE ALLONGE AFFIXED THING IF WE REALLY WANTED TO DO

12  THAT.

13          AND THE BORROWERS, THE BURDEN SHOULD BE ON THE

14  BORROWERS.  THEY SHOULD SEE THAT MOTION, AND IF THEY

15  WANT TO SEE THE ORIGINAL NOTE, THEY CAN ASK TO DO IT AS

16  PART OF DISCOVERY AS A CONTESTED MATTER, AND I'LL LET

17  THEM DO IT.  I'M NOT GOING TO DO IT MYSELF.  SO, YOU

18  KNOW, IT'S ALSO GIVING THE BORROWER A FAIR SHOT AT SO I

19  FEEL BETTER ABOUT THE FACT THAT THEY TYPICALLY DON'T

20  HAVE THE MONEY TO LAWYER UP THE WAY THE BANKS DO, OR

21  THEY WOULDN'T BE IN THE PROBLEM THEY WERE IN.

22          SO I THINK THAT THE COURT WILL ISSUE AN ORDER

23  IN THAT REGARD.  AND, AGAIN, IT'S MORE OF A WARNING FOR

24  THE FUTURE THAN A REQUIREMENT OF PAYMENT RIGHT NOW, BUT

25  I'M SERIOUS ABOUT IT.

1    MR. BARNES:  WE HAVE NO DOUBT, YOUR HONOR.  THANK

2    YOU.

3    THE COURT:  ALL RIGHT.  THANK YOU.

4    MS. DAHL:  YOUR HONOR, THAT CONCLUDES YOUR 10 A.M.

5    THE COURT:  ALL RIGHT.  WE'LL BE IN SHORT RECESS.

6                           -OOO-

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2    STATE OF CALIFORNIA

3    COUNTY OF SAN DIEGO

4

5    I, COLLETTA BROOKS, HEREBY CERTIFY:

6

7    THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD IN THE

8    FOREGOING CAUSE ON THE 29TH DAY OF JULY, 2011;

9    THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING

10    UNDER MY DIRECTION AND THAT THE FOREGOING 45 PAGES

11    CONTAIN A CORRECT STATEMENT OF THE PROCEEDINGS.

12

13    DATED THIS 04TH DAY OF AUGUST, 2011.

14

15

16    /S/COLLETTA BROOKS

17    COLLETTA BROOKS
      CSR NO. 12589
18

19

20

21

22

23

24

25

46